CITY OF CINCINNATI, APPELLEE, *v.*
REED, APPELLANT.

CITY OF CINCINNATI, APPELLEE, *v.*
CULVER, APPELLANT.

(Nos. C-840714 and -840779—Decided
July 10, 1985.)

*Richard A. Castellini,* city solicitor, *Paul J. Gorman,* city prosecutor, *John L. Hanselman, Jr.,* and *Stephen J. Fagel,* for appellee.

*Brett Goodson,* for appellants.

SHANNON, P.J. Pursuant to Cincinnati Municipal Code Section 869-7, anyone engaged in the business of offering towing services by use of a wrecker or other similar vehicle must obtain a license from the city treasurer before removing parked or disabled motor vehicles from any location within the city limits. At issue in these appeals is whether a violation of the licensing requirement made punishable under the criminal law by way of a fine and/or imprisonment, Cincinnati Municipal Code Section 869-99,[1] is a legitimate exercise of the general police powers conferred

---

[1] The penalty provision is as follows:

"Whoever violates any provision of Section 869-7 shall for a first offense be fined not more than $300; for a second offense be fined not more than $300; and for a third or subsequent offense, shall be fined not more than

upon a local government. To resolve this question, we are called upon to address a series of claims challenging the local regulatory scheme under the Commerce Clause of the federal Constitution, Section 1 of the Sherman Antitrust Act, the Interstate Commerce Act, and other provisions of state law.

There are, we note, two separate cases before us that have been consolidated upon our docket for the purposes of argument and decision. In the first of the two prosecutions, the defendant-appellant is Richard J. Reed, Jr., who owns a wrecker service located in eastern Hamilton County approximately eight miles beyond the corporation limits of Cincinnati. According to the record, Reed was summoned on June 6, 1984 to the scene of a collision between two vehicles on a public street in Cincinnati. His designated task at the time was to remove a disabled emergency vehicle pursuant to an informal agreement under which he had routinely performed towing services for one of the townships in Hamilton County. Although the Cincinnati police officer who had separately responded to the scene permitted him without apparent objection to tow the township vehicle away, Reed was cited at his place of business later the same day for operating within the city without the license required by Cincinnati Municipal Code Section 869-7 after another towing operator lodged a complaint with the police division.

The defendant-appellant in the second prosecution, Joseph R. Culver, is employed as an automobile mechanic in a garage that is situated in a suburb within the city limits of Cincinnati. On May 30, 1984, he responded to a call for assistance from a customer whose automobile had become disabled along a

stretch of interstate highway in Cincinnati. As Culver was engaged in the process of hooking the vehicle to his wrecker, a Cincinnati police officer cited him for a violation of the city's licensing requirement under the same ordinance relied upon in Reed's case. Notwithstanding the issuance of the citation, the officer did ultimately permit Culver to leave the scene with the disabled vehicle in tow. According to the record, however, the customer was never billed for the towing services as a result of a guarantee that had accompanied repair work recently performed on the vehicle.

The separate proceedings against Reed and Culver in the Hamilton County Municipal Court followed parallel courses. Although their respective cases were heard in separate courtrooms by different jurists, each of the defendants retained the same attorney, and each chose to pursue a defense predicated primarily upon the alleged invalidity of the charged offense under state and federal law. In each case, a motion to dismiss the charge was denied, and a finding of guilt was thereafter made upon a stipulation of the facts as they had been adduced at the hearing on the motion for dismissal. In Reed's case, the judge assessed a fine of forty dollars to preserve the right of appeal and remitted the costs of prosecution; and in Culver's case, the sentence was confined only to an order for the payment of court costs with no provision for a fine or imprisonment.

At this stage of the proceedings on appeal, Reed and Culver have mounted identical challenges to the dispositions of their cases in the municipal court. The first of the two assignments of error advanced by each concerns the refusal of the trial judge to dismiss the charge brought pursuant to the municipal licensing requirement, and the second brings into question the weight and sufficiency of the evidence relied upon to support the respective convictions.

---

$500, or imprisoned in the workhouse for a period of not more than 30 days, or both." Cincinnati Municipal Code Section 869-99.

With respect to the ruling on the motions for dismissal, the line of attack on the ordinance that formed the basis of the charges heard in the court below is multifaceted. In the first instance, we are confronted with a question of constitutional proportions involving the division of powers between local and national government in the realm of economic regulation. The argument pursued by Reed and Culver here is that a municipality's imposition of a licensing requirement for those engaged in the provision of towing services runs afoul of the broad regulatory powers reserved to the United States Congress under the Commerce Clause, Clause 3, Section 8, Article I, United States Constitution,[2] by creating without a valid justification an undue burden on interstate commerce. As they see it, that burden becomes all the more intolerable because the licensing requirement utterly fails to serve any legitimate interest subject to regulation in the exercise of the local police power.

Where, as here, a local ordinance is to be judged constitutionally by its effect on interstate commerce, it must be said at the outset that the Commerce Clause is not a talisman for invalidating any commercial regulation undertaken at a level below the national government. The fact of the matter is that state and local governments have been prohibited by provisions of the federal Constitution only from taking action to impede substantially the free flow of interstate commerce, and from regulating those aspects of national commerce that demand regulation by a single authority due to a prevailing need for national uniformity. The viewpoint that remains controlling to this day is well expressed in *Southern Pacific Co.* v. *Arizona* (1945), 325 U.S. 761, 770, as follows:

"* * * There has * * * been left to the states wide scope for the regulation of matters of local state concern, even though it in some measure affects the commerce, provided it does not materially restrict the free flow of commerce across state lines, or interfere with it in matters with respect to which uniformity of regulation is of predominant national concern."

The test to be applied when measuring the validity of local regulatory action under the Commerce Clause generally requires a balancing of the local interest at stake against the impact of the regulation on interstate commerce. It has been defined rather succinctly in this manner:

"* * * Where the statute regulates evenhandedly to effectuate a legitimate local public interest and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. * * * If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will * * * depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities. * * *"

*Pike* v. *Bruce Church, Inc.* (1970), 397 U.S. 137, 142. See, also, *Huron Portland Cement Co.* v. *City of Detroit* (1960), 362 U.S. 440; *Allied Artists Picture Corp.* v. *Rhodes* (S.D. Ohio 1980), 496 F. Supp. 408, affirmed in part and remanded (C.A. 6, 1982), 679 F. 2d 656; *Glenwillow Landfill, Inc.* v. *Akron* (N.D. Ohio 1979), 485 F. Supp. 671, affirmed *sub nom. Hybud Equipment Corp.* v. *Akron* (C.A. 6, 1981), 654 F. 2d 1187, vacated and remanded on other grounds (1982), 455 U.S. 931; *State* v. *Columbia*

---

[2] According to the Commerce Clause, Congress has the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes; * * *."

*Gas Transmission Corp.* (1979), 60 Ohio St. 2d 21 [14 O.O.3d 167]; *Panhandle Eastern Pipe Line Co.* v. *Pub. Util. Comm.* (1978), 56 Ohio St. 2d 334 [10 O.O.3d 452].

As in other cases where judicial intervention is sought to invalidate a legislative Act, there is a strong presumption of constitutionality to be overcome in the application of the balancing test; and that presumption requires the challenging party to bear the burden of proof to demonstrate the particular manner in which the enactment is infirm. See, generally, *Village of Hudson* v. *Albrecht, Inc.* (1984), 9 Ohio St. 3d 69; *Benevolent Assn.* v. *Parma* (1980), 61 Ohio St. 2d 375 [15 O.O.3d 450]; *State* v. *Renalist, Inc.* (1978), 56 Ohio St. 2d 276 [10 O.O.3d 408]; *State* v. *Longhorn World Championship Rodeo, Inc.*(1985), 19 Ohio App. 3d 115.

In the case *sub judice,* the local licensing requirement embodied in Cincinnati Municipal Code Section 869-7 is, by definition, strictly limited to those engaged in the business of towing or removing parked or disabled motor vehicles from any places within Cincinnati where they have been parked or disabled. Cincinnati Municipal Code Section 869-1. Although it applies to towing operators regardless of the particular site of their places of business, the two parties challenging the ordinance here are, as far as this record demonstrates, purely local Ohio operators, one doing business from a location within the city of Cincinnati and the other situated just beyond the city limits in Hamilton County.

What is clearly implicit from the definitions set forth in the regulatory scheme is to reach only those aspects of short-haul towing brought about by the need to transport vehicles for temporary storage, impoundment or repair. There is not, in our judgment, by intent or effect the sort of pervasive and wide-ranging regulation that would bear directly and routinely upon transportation regularly crossing state lines for a variety of other commercial purposes.

We have before us, in sum, an activity that appears to be essentially local in character and, therefore, a proper subject of reasonable regulation in the exercise of the local police power.[3] The local government undeniably has a legitimate interest in protecting its citizens by regulations that require those engaged in towing services within the city limits to be financially responsible and to operate in an orderly fashion with safe equipment. As in other cases where specialized services are offered to the general public, there exists a real potential for harmful or abusive business practices, and in this respect, licensing is one commonly used alternative to provide in the public interest for an acceptable level of services.

This is not to say that a licensing scheme must always be insulated from attack. When a local ordinance such as the one in issue here is said to clash with

---

[3] In Ohio, the power of a municipality to engage in regulatory activity to promote public health, safety and welfare derives from Section 3, Article XVIII, Ohio Constitution, which reads as follows:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with the general laws."

An ordinance enacted in the exercise of the local police power is generally considered to be valid if it bears a real and substantial relationship to the public health, safety and welfare, and is not arbitrary, discriminatory, capricious or unreasonable. *Cincinnati* v. *Welty* (1980), 64 Ohio St. 2d 28 [18 O.O.3d 211]; *Cleveland* v. *Raffa* (1968), 13 Ohio St. 2d 112 [42 O.O. 2d 329]; *Cincinnati* v. *Correll* (1943), 141 Ohio St. 535 [26 O.O. 116], paragraph one of the syllabus.

a particular provision of the federal Constitution, the facts adduced in support of the challenge may compel the ordinance to give way. In the case *sub judice,* however, there is no persuasive evidence to show how the city's licensing of the towing business works to impede substantially or restrict materially the free flow of interstate commerce. All the parties have to rely upon, on the state of this record, is the immutable geographic fact that the regulating locality is situated on or near the territorial boundaries of three independent states. Without more, this is, in our judgment, a fundament far too speculative for invalidating Cincinnati Municipal Code Section 869-7 under the analysis currently prevailing for a challenge brought pursuant to the Commerce Clause.

Reed and Culver next assert that the trial judge erred by refusing to set aside Cincinnati's licensing requirement for towers under various provisions of the federal and state antitrust laws. In this respect, their argument is predicated upon the enactment of a schedule of maximum fees for towing services pursuant to the rulemaking power separately established in Cincinnati Municipal Code Section 869-21, which, they reason, constitutes illegal price-fixing under the Sherman Antitrust Act, Section 1, Title 15, U.S. Code, and R.C. 1331.01 *et seq.*

Although we question whether a regulatory measure implemented and enforced solely by a local government to set a ceiling on prices in the public interest is a form of restraint on trade necessarily within the prohibitions of the antitrust laws,[4] we choose to dispose of this claim on a different ground. Whether a claim is based upon a constitutional provision, a federal statute or a state law, it is fundamental that the party seeking relief in a court of law must demonstrate a level of personal interest sufficient to create a concretely defined controversy capable of judicial resolution. See *Clermont Environmental Reclamation Co.* v. *Wiederhold* (1982), 2 Ohio St. 3d 44; *Anderson* v. *Brown* (1968), 13 Ohio St. 2d 53 [42 O.O.2d 100], paragraph one of the syllabus. The right of access to the court system shaped, in part, by this foundational requirement of standing has been described recently in *State, ex rel. Consumers League of Ohio,* v. *Ratchford* (1982), 8 Ohio App. 3d 420, where a unanimous court dismissed a petition for a writ of mandamus due to an absence of standing on the part of the relators using the following analysis:

"* * * Standing requires demonstration of a concrete injury in fact, rather than an abstract or suspected injury. Demonstration of injury in fact is limited to those situations where an individual can show he has suffered or will suffer a specific injury, even if slight, from the challenged action or inaction, and that this injury is likely to be redressed if the court invalidates the action or inaction." *Id.* at 424.

In the case *sub judice,* we are convinced from what appears in the record

---

[4] We note that under the doctrine articulated in *Parker* v. *Brown* (1943), 317 U. S. 341, certain forms of state action are exempt from the application of the antitrust laws even though they may arguably be said to impose some restraint on trade. To qualify for exemption, the regulatory action must be clearly articulated in the state's sovereign capacity and affirmatively expressed in state policy; the regulation must also be actively supervised by the state. *Community Communications Co., Inc.* v. *City of Boulder* (1982), 455 U.S. 40. *California Retail Liquor Dealers Assn.* v. *Midcal Aluminum, Inc.* (1980), 445 U.S. 97; *Goldfarb* v. *Virginia State Bar* (1975), 421 U.S. 773; *Euster* v. *Eagle Downs Racing Assn.* (C.A.3, 1982), 677 F.2d 992, certiorari denied (1982), 459 U.S. 1022.

that Reed and Culver lacked the necessary standing to raise the claimed violation of the antitrust laws as an issue in the court below. The schedule of towing fees that they sought to attack stood apart from the licensing requirement that formed the exclusive basis for their prosecutions as a part of a separate ordinance, Cincinnati Municipal Code Section 869-21, and was of no significance to the court's determination of guilt or innocence under the charges lodged against them.[5] Not only is it clear from a reading of the citations and the applicable laws that the defendants stood to suffer no jeopardy for violating the existing fee schedule, but it is also apparent that there was no basis for determining what, if any, impact a potential enforcement of the schedule would have had on their respective business practices. Under these circumstances, we must conclude that the calculation of any harm or loss to them was rendered purely speculative, and that there was no concrete injury-in-fact to demonstrate the requisite personal interest in a controversy of substance.

The final aspect of the asserted error with respect to the trial judge's refusal to dismiss the charges against Reed and Culver addresses an alleged conflict between Cincinnati's licensing ordinance and those provisions of state and federal law regulating motor carriers and motor contract carriers. The theory posited here is that local regulation of towing services has been preempted at a higher level of government by the Interstate Commerce Act, Subtitle IV, Title 49, U.S. Code, and by Chapter 4923 of the Revised Code.

Again, we cannot agree. In the first place, we are persuaded that the class of towers to which the local licensing requirement is explicitly limited places the regulation at issue within the exemptions for the towing of wrecked or disabled motor vehicles stated in the arguably apposite federal and state legislation. Section 10526(b)(3), Title 49, U. S. Code; R.C. 4923.02(A)(10). We are further convinced, notwithstanding the stated exemptions, that the licensing requirement must be held fully consistent with the federal and state enactments on the evidence in this record as a permissible regulation of essentially intrastate or local activity in the reasonable exercise of a municipality's police power. Section 10521(b)(1), Title 49, U.S. Code; R.C. 4923.13. For all of the foregoing reasons, the first assignment of error is, accordingly, without merit.

In their second assignment of error, which separately challenges the basis in law for the findings of guilt made at the conclusion of the respective proceedings in the court below upon stipulations of fact, Reed and Culver have incorporated without deviation or embellishment the arguments advanced in their first assignment. Having already determined that the ordinance under which they were charged, tried, and convicted is a reasonable expression of local police power that does not violate either the federal Constitution, or federal and state antitrust laws, or federal and state motor-carrier laws we are constrained to hold that this remaining claim of error is also without merit.

The judgments of the municipal court are hereby affirmed.

*Judgments affirmed.*

DOAN and HILDEBRANDT, JJ., concur.

---

[5] According to our reading of the city's general regulatory scheme, a failure to observe the maximum fee schedule is specifically recognized only as a ground for the revocation of a towing license, Cincinnati Municipal Code Section 869-23(e); it is not separately made punishable as a violation of the criminal law under Cincinnati Municipal Code Section 869-99.