[Cite as *Cleveland v. State*, 2012-Ohio-3572.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97679**

## CITY OF CLEVELAND

PLAINTIFF-APPELLANT

vs.

## STATE OF OHIO

DEFENDANT-APPELLEE

### JUDGMENT:
### REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-687935

**BEFORE:** Kilbane, J., Blackmon, A.J., and Cooney, J.

**RELEASED AND JOURNALIZED:** August 9, 2012

**ATTORNEYS FOR APPELLANT**

Barbara Langhenry
City of Cleveland Interim Director of Law
Gary S. Singletary
Assistant Director of Law
Cleveland City Hall, Room 106
601 Lakeside Avenue
Cleveland, Ohio 44114-1077

**ATTORNEYS FOR APPELLEE**

Mike Dewine
State of Ohio Attorneys General
Pearl M. Chin
Jeannine Lesperance
Assistant Attorney General
Constitutional Offices Section
30 East Broad Street, 17th Floor
Columbus, Ohio 43215-3428

MARY EILEEN KILBANE, J.:

{¶1}   The city of Cleveland ("the City")  appeals from the order of the trial court that rejected its challenge to the preemption provision of R.C. 4921.30.  For the reasons set forth below, we conclude that R.C. 4921.30 is not a general law because it is not part of a comprehensive, statewide legislative enactment, does not operate uniformly throughout the state, does not set forth police regulations but simply purports to limit municipal legislative power, and does not prescribe a rule of conduct upon citizens generally.   We therefore conclude that R.C. 4921.30 unconstitutionally limits a municipality's home-rule police powers, so we reverse the trial court's grant of summary judgment to the state and direct that the trial court enter summary judgment for the City.

{¶2}   In 1981, the City adopted Cleveland Codified Ordinances ("CCO") Chapter 677A, entitled "Tow Trucks," adopted in 1981.  Under the provisions of this chapter, every person driving a tow truck within the city of Cleveland must obtain a license from the City's Commissioner of Assessments and Licenses.   It additionally contains provisions regarding the qualifications and fitness of tow truck operators, provisions regarding identifying information for vehicles, provisions barring an uninvited response to accident scenes, and rules outlining mandatory record keeping or "transport sheets" detailing, inter alia, the location and charges for each tow.

{¶3}   In March 2003, the Ohio General Assembly adopted R.C. 4921.30, which provides:

Any person, firm, copartnership, voluntary association, joint-stock association, company, or corporation, wherever organized or incorporated, that is engaged in the towing of motor vehicles is subject to regulation by the public utilities commission as a for-hire motor carrier under this chapter.

Such an entity is not subject to any ordinance, rule, or resolution of a municipal corporation, county, or township that provides for the licensing, registering, or regulation of entities that tow motor vehicles.

{¶4} Also in March 2003, the Ohio General Assembly rescinded the exclusion set forth in R.C. 4921.02(A)(8), and therefore included companies "[e]ngaged in the towing of disabled or wrecked motor vehicles" within the definition of a "[m]otor transportation company."

{¶5} This legislation, in effect, added tow trucks to the state's PUCO regulation of transportation for-hire motor carriers, and preempted local laws pertaining to the licensing, registering, or regulation of entities that tow motor vehicles regulation.

{¶6} CCO 677A remained in effect. The City maintained that the state statute unconstitutionally interfered with its home-rule authority, and in reliance upon CCO 677A, impounded tow trucks that did not meet the City's licensing requirements. *See Rodriguez v. Cleveland*, 619 F.Supp.2d 461 (N.D.Ohio 2009).[1]

---

[1]In that case, Rodriguez filed suit in federal court against the City, the arresting officers, and others alleging a violation of 42 U.S.C. 1983 and other claims, and the City defendants claimed that they were entitled to qualified immunity based upon the facial validity of CCO 677A. Ultimately, the United States Court of Appeals for the Sixth Circuit agreed that the defendants in that

{¶7} On March 19, 2009, the City filed a declaratory judgment against the state of Ohio, seeking determinations that (1) R.C. 4921.30 is not a "general law," and (2) that R.C. 4921.30 violates the City's power of local self-government to regulate the towing of motor vehicles. In its answer, the state denied that the City is entitled to declaratory relief, and the parties subsequently filed dispositive motions.

{¶8} In its motion for summary judgment, the City maintained that the state had simply added tow trucks to its PUCO scheme of regulating motor transportation companies. R.C. 4921.30 is not part of a comprehensive legislative enactment for tow truck operators, but rather, simply purports to abolish all local regulation. Moreover, the preemption language is at odds with the local regulatory authority over motor transportation companies recognized in R.C. 4921.25 that permits local subdivisions to "make reasonable local police regulations relating to motor transportation companies * * * not inconsistent with the authority of the PUCO."

{¶9} In opposition, the state noted that the Ohio General Assembly has given the PUCO authority to supervise and regulate "motor transportation companies" since 1923, and this term has included tow trucks since 2003. Applying the analytic framework set forth in *Canton v. State*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, the state argued that R.C. 4921.30 does not simply limit the legislative power of cities, but is part

case were entitled to qualified immunity because it was unclear whether CCO 677A came within the Section 14501(c)(2)(A)'s exception to federal preemption, and because it was also unclear whether the ordinance was preempted by Ohio law. *Rodriguez v. Cleveland*, 439 Fed.Appx. 433, (6th Cir.2011).

of a comprehensive statewide scheme of regulations. The state further argued that R.C. 4921.30 operates uniformly across the state and prevents "conflicting patchwork regulation by the cities." It additionally argued that R.C. 4921.30 is part of a safety regulatory scheme that adopts and enhances safety regulations of the U.S. Department of Transportation, and that it prescribes a rule of conduct upon citizens generally.

{¶10} The state additionally noted that R.C. 4921.30 preempts licensing, registering, and regulation of entities that tow motor vehicles, but does not preempt all local authority over tow trucks and allows municipalities to exercise local police powers over matters outside the jurisdiction of the PUCO.

{¶11} On November 17, 2011, the trial court concluded that R.C. 4921.30 is a valid general law that does not unconstitutionally infringe upon the City's home-rule authority and granted the state's motion for summary judgment.

{¶12} The City now appeals. For its sole assignment of error, the City argues that the trial court erred in concluding that R.C. 4921.30 is a general law and that its preemption provision does not violate municipal home-rule authority.

{¶13} With regard to procedure, we note that appellate review of a trial court's grant of summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241.

{¶14} The moving party carries the initial burden of providing specific facts that demonstrate its entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280,

292, 1996-Ohio-107, 662 N.E.2d 264. Civ.R. 56( C) provides that before summary judgment may be granted, a court must determine:

> (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party.

{¶15} Once the moving party has met its initial burden, the nonmoving party must produce competent evidence establishing the existence of a genuine issue for trial. *Dresher* at 288. In responding to a motion for summary judgment, a nonmoving party may not rest on "unsupported allegations in the pleadings." *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978). Rather, Civ.R. 56 requires a nonmoving party to respond with competent evidence to demonstrate the existence of a genuine issue of material fact.

{¶16} We additionally note that statutes enjoy a strong presumption of constitutionality. *State v. Bloomer*, 122 Ohio St.3d 200, 2009-Ohio-2462, 909 N.E.2d 1254, ¶ 41. The party challenging the constitutionality of a statute bears the burden of proving that it is unconstitutional beyond a reasonable doubt. *Id.*

{¶17} Section 3, Article XVIII of the Ohio Constitution, the home-rule amendment, gives municipalities the "authority to exercise all powers of local

self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

{¶18} As explained in *Am. Fin. Servs. Assn. v. Cleveland*, 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776:

> [T]he constitutional provision as adopted gave municipalities the exclusive power to govern themselves, as well as additional power to enact local health and safety measures not in conflict with general laws, [but] "exclusive state power was retained in those areas where a municipality would in no way be affected or where state dominance seemed to be required." (Emphasis sic.)

*Id*. at ¶ 27, quoting Vaubel, *Municipal Home Rule in Ohio*, at 1107-1108 (1978).

{¶19} In *Canton*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, at ¶ 9, the Ohio Supreme Court set forth a three-part test for evaluating conflicts under the home-rule amendment. Pursuant to that test, a state statute takes precedence over a municipal ordinance and does not unconstitutionally infringe upon municipal home-rule authority when: (1) the ordinance is in conflict with the statute; (2) the ordinance is an exercise of the police power, rather than of local self-government; and (3) the statute is a general law. Where the statute fails to meet all of these conditions, it is not a general law, and, as such, it must yield to the municipal ordinance in question. *Id*. at 151.

{¶20} In this matter, the City alleged in its complaint and in its motion for summary judgment that R.C. 4921.30 is not a "general law," and therefore, that is the focus of our analysis herein.

{¶21} "A general law has been described as one which promotes statewide uniformity." *Ohio Assn. of Private Detective Agencies, Inc. v. N. Olmsted*, 65 Ohio St.3d

242, 244, 1992-Ohio-65, 602 N.E.2d 1147. "Once a matter has become of such general interest that it is necessary to make it subject to statewide control as to require uniform statewide regulation, the municipality can no longer legislate in the field so as to conflict with the state." *State ex rel. McElroy v. Akron*, 173 Ohio St. 189, 194, 181 N.E.2d 26 (1962).

{¶22} The *Canton* court adopted a four-part test for determining whether a statute is a general law for purposes of home-rule analysis. The statute must "(1) be part of a statewide and comprehensive legislative enactment, (2) apply to all parts of the state alike and operate uniformly throughout the state, (3) set forth police, sanitary, or similar regulations, rather than purport only to grant or limit legislative power of a municipal corporation to set forth police, sanitary or similar regulations, and (4) prescribe a rule of conduct upon citizens generally." *Canton*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, at syllabus.

1. Statewide and Comprehensive Legislative Enactment

{¶23} In determining whether a challenged statute is part of a comprehensive, statewide scheme or plan, courts look to the range of activity subject to regulation under the enactment and whether it serves a statewide concern. *See Clermont Environmental Reclamation Co. v. Wiederhold*, 2 Ohio St.3d 44, 48, 442 N.E.2d 1278 (1982); *Ohioans for Concealed Carry, Inc. v. Clyde*, 120 Ohio St.3d 96, 2008-Ohio-4605, 896 N.E.2d 967.

{¶24} In this matter, we note that in the Motor Carrier Safety Act of 1984, the United States Department of Transportation, through the Federal Motor Carrier Safety Regulations, implemented safety regulations for drivers of commercial motor vehicles. *Gruenbaum v. Werner Ent., Inc*., S.D.Ohio No. 09-CV-1041, 2011 WL 563912 (Feb. 2, 2011). Ohio adopted the safety regulations in Ohio Adm.Code 4901:2-5-02. *B&T Express, Inc. v. Pub. Util. Comm*., 145 Ohio App.3d 656, 662, 763 N.E.2d 1241 (10th Dist.2001). *See* Ohio Adm.Code 4901:2-5-02.

{¶25} R.C. 4921.02 sets forth the general powers of the Public Utilities Commission to regulate certain carriers, and includes in its definition of common carrier "every corporation, company * * * engag[ed] in the business of transporting persons or property, or the business of providing or furnishing such transportation service, for hire, whether directly or by lease or other arrangement, for the public in general."

{¶26} Prior to March 2003, R.C. 4921.02(A)(8) specifically excluded companies "[e]ngaged in the towing of disabled or wrecked motor vehicles" from the definition of a "[m]otor transportation company." *See* Am.Sub.H.B. 87.

{¶27} Over time, however, the federal government has, through various enactments, deregulated the motor carrier industry, and in 49 U.S.C. 14501(c) of the Interstate Commerce Commission Termination Act, Congress enacted a provision preempting "a State, political subdivision of a State, or political authority of 2 or more States [from enacting or enforcing] a law, regulation, or other provision having the force

and effect of law related to a price, route, or service of any motor carrier  * * * with respect to the transportation of property."

**{¶28}** In June 2002, the United States Supreme Court acknowledged that Section 14501 generally preempts state and local regulation, but under an exception set forth in Section 14501(c)(2)(A), states maintained "safety regulatory authority" and authority to require minimum financial responsibility. The court therefore concluded that the state power preserved in Section 14501(c)(2)(A) may be delegated to municipalities, permitting them to exercise safety regulatory authority over local tow truck operations. *See Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 438, 122 S.Ct. 2226, 153 L.Ed.2d 430 (2002). The court also stated that "[t]ow trucks, all parties to this case agree, are 'motor carrier[s] of property' falling within § 14501(c)'s compass." The court explained:

> The Ohio Constitution currently grants municipalities within the State general authority "to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with the general laws." Art. XVIII, § 3. * * * Particularly relevant here, Ohio has exempted tow trucks from the State's regulation of motor carriers, § 4921.02(A)(8), thus leaving tow truck regulation largely to the cities. *Cincinnati v. Reed,* 27 Ohio App.3d 115, 500 N.E.2d 333 (1985).
>
> * * *
>
> § 14501(c)(2)(A) shields from preemption only "safety regulatory authority" (and "authority of a State to regulate * * * with regard to minimum amounts of financial responsibility relating to insurance requirements"). Local regulation of prices, routes, or services of tow trucks that is not genuinely responsive to safety concerns garners no exemption from § 14501(c)(1)'s preemption rule.

{¶29} In March 2003, following the *Ours Garage* decision, the Ohio General Assembly rescinded the exclusion for tow trucks set forth in R.C. 4921.02(A)(8), and therefore included companies "[e]ngaged in the towing of disabled or wrecked motor vehicles" within the definition of a "[m]otor transportation company."

{¶30} Also in March 2003, the Ohio General Assembly adopted R.C. 4921.30, which provides:

Any person, firm, copartnership, voluntary association, joint-stock association, company, or corporation, wherever organized or incorporated, that is engaged in the towing of motor vehicles is subject to regulation by the public utilities commission as a for-hire motor carrier under this chapter.

Such an entity is not subject to any ordinance, rule, or resolution of a municipal corporation, county, or township that provides for the licensing, registering, or regulation of entities that tow motor vehicles.

{¶31} This overview of the events surrounding the enactment of R.C. 4921.30 indicates that tow trucks were simply included within the state's regulation of for-hire motor carriers following the *Ours Garage* decision.

{¶32} Moreover, we conclude that this matter is similar to the situation presented in *Canton*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963. In *Canton*, the city's ordinance prohibited "manufactured homes" within the city limits as principal or accessory structures for residential use. Thereafter, the legislature enacted R.C. 3781.184 that pertained to manufactured homes. Subsections (A) and (B) addressed

construction and safety standards, Subsection (C) of the statute prohibited political subdivisions from barring or restricting manufactured homes in single-family zones, Subsection (D) set forth an exception to subsection ( C) and permitted private landowners to incorporate restrictive covenants in deeds to prohibit the inclusion of, among other things, manufactured homes.

{¶33} In concluding that Subsections (C) and (D) are not part of a statewide and comprehensive zoning plan, the Supreme Court noted:

R.C. Chapter 3781 relates to building standards but varies widely in its content * * *.

Moreover, the state does not have a statewide zoning scheme, nor does the state have a comprehensive plan or scheme for the licensing, regulation, or registration of manufactured homes. Instead, R.C. 3781.184(A) and (B) simply refer to the current federal standards regulating the construction of manufactured homes. A United States district court has held that "[t]he [Federal Manufactured Home Construction and Safety Standards Act of 1974, Section 5403, Title 42, U.S.Code] preempts only construction and safety standards and does not apply to local zoning ordinances that purport to regulate the placement of certain types of dwellings in the community." The court held that the codes at issue (Canton Ordinances 1123.57 and 1129.11) are zoning ordinances not aimed at construction and safety standards. "Because Congress intended to regulate safety and construction only, local laws aimed at purposes outside that area are not preempted by

the Act. There is no indication that Congress intended to regulate any other aspect of the manufactured home industry." *See Ohio Manufactured Hous. Assn. v. Canton* (Dec. 4, 1998), N.D. Ohio No. 5:97 CV 1190. Accordingly, we conclude that R.C. 3781.184(C) and (D) do not provide for uniform, statewide regulation of manufactured housing.

*Canton* at ¶ 23-24.

{¶34} Similarly, in this matter, although there has been considerable state and federal regulation of motor carriers, there has not been a comprehensive legislative enactment with respect to tow truck enterprises. To date, the legislature has not set forth a comprehensive plan or scheme for the licensing, regulation, or registration of tow truck enterprises. Instead, the existing scheme pertains to for-hire motor carriers and adopts federal safety regulations. This absence of a comprehensive scheme for tow truck operations stands in stark contrast with the detailed, comprehensive scheme through which the City sought, through its police powers, to regulate tow truck operations under CCO 677A. We therefore cannot infer an intent to preempt local legislation based upon broad regulatory enactment in this field. Accordingly, we conclude that R.C. 4921.30 is not part of a statewide and comprehensive legislative enactment.

2. Uniform Operation Throughout the State

{¶35} General laws must "apply to all parts of the state alike." *Canton*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, at ¶ 13, quoting *Schneiderman v. Sesanstein*, 121 Ohio St. 80, 82-83, 167 N.E. 158 (1929).

{¶36} In this matter, however, the definition of motor transportation company set forth in R.C. 4921.02(A), does not include private motor carriers, as it incorporates an exclusion for companies meeting the definition set forth in R.C. 4923.02(A), i.e., companies "engaged in the business of private carriage of persons or property, or both, or of providing or furnishing such transportation service, for hire * * *[.]"

{¶37} Therefore, private tow truck companies may have their own rules, policies, and practices. Again, *Canton* is instructive. In evaluating the statutory exception to R.C. 3781.184, which provided that, "[t]his section does not prohibit a private landowner from incorporating a restrictive covenant in a deed, prohibiting the inclusion on the conveyed land of manufactured homes," the Ohio Supreme Court noted:

> [T]he statute will effectively apply only in older areas of the state, i.e., cities where residential areas no longer have effective deed restrictions or no longer have active homeowner associations. Because we find that R.C. 3781.184(D) permits that which the statute prohibits, we find that it is inconsistent with the statute's stated purpose, i.e., to encourage placement of affordable manufactured housing units across the state. Thus, we hold that R.C. 3781.184(C) and (D) do not have uniform application to all citizens of the state, and as such are not general laws.

{¶38} Likewise, in this matter, R.C. 4921.30 does not apply to private tow companies or otherwise include them in the PUCO regulatory scheme for for-hire motor carriers. The exclusion for private tow truck enterprises defeats the claimed statewide

concern of generally regulating tow truck enterprises, because it permits that which the statute prohibits. This exclusion is therefore inconsistent with the statute's purpose of providing uniform regulation throughout the state. As was the case in *Canton*, regulation imposed upon public for hire tow truck operators is not applicable to private tow truck enterprises and arbitrarily permits disparate rules and regulations regarding those companies. Accordingly, we find that R.C. 4921.30 does not have uniform operation throughout the state.

### 3. Establishes Police Regulations Rather Than Granting or Limiting Municipal Legislative Power

{¶39} Proceeding to the third prong of the general law test outlined in *Canton*, we next consider whether R.C. 4921.30 sets forth police, sanitary, or similar regulations; or, instead, simply purports only to grant or limit legislative power of a municipal corporation to set forth police, sanitary, or similar regulations. Again, the legislature has not established police regulations for the operation of tow truck enterprises, and the R.C. 4921.30 preemption provision is not part of a larger regulatory scheme for tow truck operators. That is, in the years following the enactment of R.C. 4921.30, no other statutory provisions have been enacted to address such enterprises, and there is no clear indication that tow truck regulation is indeed a matter of such general interest that it is necessary to make it subject to statewide control. Like R.C. 4549.17, which was deemed unconstitutional in *Linndale v. State*, 85 Ohio St.3d 52, 1999-Ohio-434, 706 N.E.2d 1227, R.C. 4921.30 is "simply a limit on the legislative powers of municipal corporations to adopt and enforce specified police regulations." Therefore, we conclude that the preemption language simply curtails the City's police powers in this area and does not meet the third element of the *Canton* test.

## 4. Prescribes a Rule of Conduct Upon Citizens Generally

**{¶40}** With regard to the final element of the *Canton* test, the *Linndale* Court also defined general laws as "those operating uniformly throughout the state, prescribing a rule of conduct on citizens generally and operating with general uniform application throughout the state under the same circumstances and conditions." *Linndale* at 54. Statutes that pertain to certain entities only do not prescribe a rule of conduct upon citizens generally, so they do not meet this element. *Id.* Conversely, statutes that go beyond merely limiting municipal authority and establish a rule of conduct for those who are the subject of the legislation have satisfied this element of the *Canton* test. *See Am. Fin. Servs. Assn.*, 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776.

**{¶41}** In determining whether R.C. 4921.30 prescribes a rule of conduct upon citizens generally, we conclude that it is not a part of a system of uniform statewide regulation on the subject of tow truck operation. It is a statute that simply provides that municipalities, counties, and townships may not license, register, or regulate entities that tow motor vehicles; it does not prescribe a rule of conduct upon citizens generally. Accordingly, the fourth element of the *Canton* test is not met.

**{¶42}** In accordance with the foregoing, R.C. 4921.30 does not meet the test set forth in *Canton*, so we conclude that it is not a general law. Further, because R.C. 4921.30 is not a general law, it unconstitutionally attempts to limit municipal home-rule authority.

**{¶43}** We therefore conclude that the trial court erred in granting the state of Ohio's motion for summary judgment.   We reverse that order and direct the trial court to enter summary judgment in favor of the City.

**{¶44}** Reversed and remanded with instructions to enter judgment in favor of appellant.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MARY EILEEN KILBANE, JUDGE

PATRICIA A. BLACKMON, A.J., CONCURS;
COLLEEN CONWAY COONEY, J., DISSENTS (SEE SEPARATE DISSENTING OPINION)

COLLEEN CONWAY COONEY, J., DISSENTING:

**{¶45}** I respectfully dissent.   I would affirm the trial court judgment.

Statewide and Comprehensive

{¶46} The first prong of the *Canton* test requires the statute in question be part of a statewide and comprehensive legislative enactment. The City argues that R.C. 4921.30 is not part of such legislative enactment, while the State argues that when taken in context with PUCO regulations, R.C. 4921.30 is clearly part of a statewide and comprehensive legislative enactment.

{¶47} The City argues that the PUCO regulations do not constitute statewide legislation because they are not 1) newly enacted, nor 2) specifically tow truck regulations. I am not persuaded by this argument because neither is a requirement under the *Canton* test.

{¶48} By defining any organization that operates tow trucks as "for-hire motor carrier[s]" under this statute, R.C. 4921.30 successfully encompassed all tow truck operators under the pre-existing laws of the PUCO. In turn, R.C. 4921.30 is part of the PUCO, an undisputed statewide legislative enactment. The City's interpretation of the statute in question appears to occur in a vacuum, not acknowledging PUCO on a statewide basis. *See Am. Fin. Servs. Assn. v. Cleveland ("AFSA")*, 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776 (the Ohio Supreme Court found that legislation that defined covered loans and authorized the state to "solely regulate" said loans was part of comprehensive statewide legislation). *See also Ohio Assn. of Private Detective Agencies v. N. Olmsted*, 65 Ohio St.3d 242, 1992-Ohio-65, 602 N.E.2d 1147 (Ohio Supreme Court found that a statutory provision, when considered in isolation, "may fail to qualify as a

general law because it prohibits a municipality from exercising a local police power while not providing for uniform statewide regulation of the same subject matter. *See Youngstown v. Evans* (1929), 121 Ohio St. 342, 168 N.E. 844." However, when the provision's chapter is read in its entirety it could reveal a statewide regulation.)

{¶49} Thus, I would find that the statute in question satisfies the first prong of the *Canton* test.

## Uniformity

{¶50} The second prong of the test requires that the statute apply to all parts of the State alike and operate uniformly throughout the State.

{¶51} The State argues that R.C. 4921.30 does apply to all parts of the State alike and operates uniformly throughout the State. The City does not dispute this argument. Thus, I would find that R.C. 4921.30 satisfies the second prong of the *Canton* "general law" test.

## Police, Sanitary, or Similar Regulations

{¶52} The third prong of the test requires that the statute set forth police, sanitary, or similar regulations, rather than purport only to grant or limit legislative power of a municipal corporation.

{¶53} The City concedes that the regulation of tow trucks in the context of traffic regulation is clearly an exercise of the State's police power. As addressed above in the first prong, prior case law indicates that individual statutes should not be read in isolation but within the larger statutory scheme. R.C. Chapter 4921 in its entirety, along with the

PUCO, clearly sets forth regulations as opposed to strictly limiting the municipality's legislative power.

{¶54} Thus, I would find that R.C. 4921.30 satisfies the third prong of the *Canton* "general law" test.

<u>Rule of Conduct Upon Citizens</u>

{¶55} The fourth prong of the test requires that the statute prescribes a rule of conduct upon citizens generally.

{¶56} The City fails to articulate a reason why this statute does not prescribe a rule of conduct upon citizens generally, and instead rehashes its argument that the law limits the municipality's legislative power without setting forth independent regulations. The State compares R.C. 4921.30 to the statutes found in *AFSA* and in *Cleveland v. State*, 128 Ohio St.3d 135, 2010-Ohio-6318, 942 N.E.2d 370, both of which were found to satisfy the fourth prong by prescribing a rule of conduct upon citizens generally. When taken as a whole, it appears to me that R.C. Chapter 4921 and the PUCO establish rules of conduct for all Ohio operators who provide intrastate towing services, without exception. I see no distinction for private motor carriers as the majority finds, nor has the City raised such a claim.

{¶57} Thus, I would find that R.C. 4921.30 satisfies the fourth prong of the *Canton* "general law" test.

{¶58} Having satisfied the four elements of the *Canton* test, I would find that R.C. 4921.30 constitutes a "general law" and does not violate the Home Rule Amendment of

the Ohio Constitution. The City has failed to meet its burden of showing beyond a reasonable doubt that R.C. 4921.30 violated the Ohio Constitution.

**{¶59}** Accordingly, I would affirm the trial court.