[Cite as *Cleveland v. State*, 2013-Ohio-1186.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   98616

## CITY OF CLEVELAND

PLAINTIFF-APPELLEE

vs.

## STATE OF OHIO

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-772529

**BEFORE:**   E.A. Gallagher, J., Stewart, A.J., and Rocco, J.

**RELEASED AND JOURNALIZED:**   March 28, 2013

**ATTORNEYS FOR APPELLANT**

Mike DeWineAttorney General of Ohio

By:   Pearl M. Chin
Assistant Attorney General
Constitutional Offices Section
30 East Broad St.,16th Floor
Columbus, Ohio   43215

**ATTORNEYS FOR APPELLEE**

Barbara A. Langhenry
Director of Law

By:   Gary S. Singletary
Shirley A. Tomasello
Assistant Directors of Law
Cleveland City Hall, Room 106
601 Lakeside Avenue
Cleveland, Ohio   44114-1077

**AMICUS CURIAE**

Samantha Graff
Research Director
Changelab Solutions, NPLAN
2201 Broadway, Suite 502
Oakland, California   94612

Mark A. McGinnis
Donald J. McTigue
J. Corey Colombo
McTigue and McGinnis, L.L.C.
545 East Town Street
Columbus, Ohio   43215

Julie Ralston Aoki
Public Health Law Center
William Mitchell College of Law
875 Summit Avenue
St. Paul, Minnesota   55105

EILEEN A. GALLAGHER, J.:

{¶1} The state of Ohio appeals from the order of the Cuyahoga Court of Common Pleas finding R.C. 3717.53 to be (1) an unconstitutional attempt to preempt the city of Cleveland ("the city") from exercising its home rule authority and (2) that the amendments to R.C. 3717.53 contained within Am. Sub. H.B. 153 are in violation of the one-subject rule. For the reasons set forth below, we conclude R.C. 3717.53 is not a general law because it is not part of a comprehensive, statewide legislative enactment; does not operate uniformly throughout the state; does not set forth police regulations but simply purports to limit municipal legislative power and does not prescribe a rule of conduct upon citizens generally. We, therefore, conclude that R.C. 3717.53 unconstitutionally limits a municipality's home rule police powers. We further find the amendments to the statute within Am. Sub. H.B. 153 are in violation of the one-subject rule and affirm the judgment of the trial court.

{¶2} In April of 2011, the city adopted Cleveland Codified Ordinances ("CCO") 241.42, entitled "Foods Containing Industrially-Produced Trans Fat Restricted." The ordinance provides as follows:

> (a) No foods containing industrially-produced trans fat, as defined in this section, shall be stored, distributed, held for service, used in preparation of any menu item or served in any food shop, as defined in Section 241.03(b) of this code or successor provision, except food that is being served directly

to patrons in a manufacturer's original sealed package.

(b) For purposes of this section, a food shall be deemed to contain industrially-produced trans fat if the food is labeled as containing, lists as an ingredient, or has vegetable shortening, margarine or any kind of partially hydrogenated vegetable oil. However, a food whose nutrition facts label or other documentation from the manufacturer notes the trans fat content of the food is zero (0) grams as labeled then it shall not be deemed to contain industrially-produced trans fat.

(c)  Food shops shall maintain on site the original labels identifying the trans fat content or an affidavit provided the food supplier identifying the trans fat content of the food products supplied, or other approved alternative documentation for all food products:

(l)   That are, or that contain, fats, oils or shortenings;

(2) That are, when purchased by such food shops, required by applicable federal and state law to have labels; and

(3)  That are currently being stored, distributed, held for service, used in preparation of any menu items, or served by the food service establishment.

Documentation Instead of Labels. Documentation acceptable to the Director and based upon information. Documentation acceptable to the Director, from the manufacturers of such food products, indicating whether the food products contain vegetable shortening, margarine or any kind of partially hydrogenated vegetable oil, or indicating trans fat content, may be maintained instead of original labels.

Documentation required when food products are not labeled. If baked goods, or other food products restricted pursuant to division (a) of this section, that are or that contain fats, oils or shortenings, are not required to be labeled when purchased, food shops shall obtain and maintain documentation acceptable to the Director and based upon information, from the manufacturers of the food products, indicating whether the food products contain vegetable shortening, margarine or any kind of partially hydrogenated vegetable oil, or indicating trans fat content.

(d)    The Director of Public Health may make rules and regulations to secure proper enforcement of this section.

(e)    Whoever violates this section is liable to the City of Cleveland for a civil offense and shall receive a warning on the first offense; on the second

offense, shall be fined one hundred fifty dollars ($150.00); on a third offense shall be fined two hundred fifty dollars ($250.00); and beginning with the fourth offense, shall be fined three hundred fifty dollars ($350.00) and each day a violation occurs shall be a separate offense. Any person charged with the commission of a civil offense under this section may appeal to the Director of Public Health, or his or her designee. The appeal shall be taken not later than twenty (20) days from the date of the civil charge. Failure to file an appeal or pay the costs imposed within this time period shall constitute a waiver of the right to contest the charge and shall be considered an admission.

(f) This section shall take effect on January 1, 2013 with respect to oils, shortenings and margarines containing industrially-produced trans fat that are used for frying or in spreads; except that the effective date of this section with regard to oils or shortenings used for deep frying of yeast dough or cake batter, and all other foods containing industrially-produced trans fat, shall be July 1, 2013.

{¶3} In 2011, the Ohio General Assembly enacted Am. Sub. H.B. 153 which, among other things, amended R.C. 3717.53, entitled "Regulation of food nutrition information at food service operations." R.C. 3717.53 states:

(A) As used in this section:

(1) "Food nutrition information" includes, but is not limited to, the caloric, fat, carbohydrate, cholesterol, fiber, sugar, potassium, protein, vitamin, mineral, allergen, and sodium content of food. "Food nutrition information" also includes the designation of food as healthy or unhealthy.

(2) "Political subdivision" and "local legislation" have the same meanings as in section 905.501 of the Revised Code.

(3) "Consumer incentive item" means any licensed media character, toy, game, trading card, contest, point accumulation, club membership, admission ticket, token, code or password for digital access, coupon, voucher, incentive, crayons, coloring placemat, or other premium, prize, or consumer product that is associated with a meal served by or acquired from a food service operation.

(B) The director of agriculture has sole and exclusive authority in this state to regulate the provision of food nutrition information and consumer incentive items at food service operations. The director may adopt rules for

that purpose in accordance with Chapter 119 of the Revised Code, including rules that establish a schedule of civil penalties for violations of this section and rules adopted under it. Subject to the approval of the joint committee on agency rule review, portions of the rules may be adopted by referencing all or any part of any federal regulations pertaining to the provision of food nutrition information and consumer incentive items.

The regulation of the provision of food nutrition information and consumer incentive items at food service operations and how food service operations are characterized are matters of general statewide interest that require statewide regulation, and rules adopted under this section constitute a comprehensive plan with respect to all aspects of the regulation of the provision of food nutrition information and consumer incentive items at food service operations in this state. Rules adopted under this section shall be applied uniformly throughout this state.

(C) No political subdivision shall do any of the following:

(1) Enact, adopt, or continue in effect local legislation relating to the provision or nonprovision of food nutrition information or consumer incentive items at food service operations;

(2) Condition a license, a permit, or regulatory approval on the provision or nonprovision of food nutrition information or consumer incentive items at food service operations;

(3) Ban, prohibit, or otherwise restrict food at food service operations based on the food nutrition information or on the provision or nonprovision of consumer incentive items;

(4) Condition a license, a permit, or regulatory approval for a food service operation on the existence or nonexistence of food-based health disparities;

(5) Where food service operations are permitted to operate, ban, prohibit, or otherwise restrict a food service operation based on the existence or nonexistence of food-based health disparities as recognized by the department of health, the national institute of health, or the centers for disease control.

{¶4} On January 3, 2012, the City filed a declaratory judgment against the state

of Ohio, seeking determinations that (1) R.C. 3717.53 is not a "general law," (2) that R.C. 3717.53 represents an unconstitutional attempt to preempt the city's municipal home rule authority, (3) that the General Assembly's amendments to R.C. 3717.53 as adopted in Am. Sub. H.B. 153 violate the one-subject rule of the Ohio Constitution, and (4) that the city's enactment and enforcement of CCO 241.42 is a proper exercise of local home rule authority. In its answer, the state denied that the city is entitled to declaratory relief, and the parties subsequently filed dispositive motions.

{¶5} On June 11, 2012, the trial court granted summary judgment in favor of the city, holding that R.C. 3717.53 is not a general law, the attempted enforcement of R.C. 3717.53 is an unconstitutional attempt to preempt the city from exercising its home rule powers, the amendments to R.C. 3717.53 contained within Am. Sub. H.B. 153 are unconstitutional and contrary to the one-subject rule of the Ohio Constitution and CCO 241.42 is not in conflict with the general laws of Ohio and that the city's enactment and enforcement of the same constitutes a proper exercise of the city's home rule authority.

{¶6} The state now appeals asserting the following four assignments of error that challenge each of the trial court's legal conclusions:

Assignment of Error I

The trial court erred in ruling that the Ohio Informed Consumer Food Choice Law (R.C. 3717.53), read together with Ohio Revised Code Chapter 3717 and its accompanying regulations in the Ohio Administrative Code, is not a general law for purposes of the Home Rule Amendment of the Ohio Constitution, Article XVIII, Section 3.

Assignment of Error II

The trial court erred in ruling that R.C. 3717.53 is an unconstitutional attempt to preempt the City of Cleveland from exercising its Home Rule powers under the Ohio Constitution.

Assignment of Error III

The trial court erred in ruling that Cleveland Codified Ordinance 241.42 is not in conflict with a general law of the State of Ohio as set forth in Ohio Revised Code Chapter 3717, its accompanying regulations in the Ohio Administrative Code, and R.C. 3717.53.

Assignment of Error IV

The trial court erred in ruling that the amendments to R.C. 3717.53 included in Amended Substitute House Bill No. 153 of the 129th Ohio General Assembly violate the One Subject Rule of the Ohio Constuitution, Article II, Section 15(D).

{¶7} Because the state's first, second and third assignments of error each pertain to the question of whether R.C. 3717.53 violates the Home Rule Amendment and unconstitutionally preempts the city's authority to enact and enforce CCO 241.42, we address those assignments of error together.

{¶8} As an initial matter, we note that appellate review of a trial court's grant of summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241. Pursuant to Civ.R. 56(C), summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick*

*Chem. Corp.*, 73 Ohio St.3d 679, 1995-Ohio-286, 653 N.E.2d 1196, paragraph three of the syllabus; *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 1998-Ohio-389, 696 N.E.2d 201. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 1996-Ohio-107, 662 N.E.2d 264.

{¶9} Statutes enjoy a strong presumption of constitutionality. *State v. Bloomer*, 122 Ohio St.3d 200, 2009-Ohio-2462, 909 N.E.2d 1254, ¶ 41. The party challenging the constitutionality of a statute bears the burden of proving that it is unconstitutional beyond a reasonable doubt. *Id.*

{¶10} Section 3, Article XVIII of the Ohio Constitution, the Home Rule Amendment, gives municipalities the "authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

{¶11} As explained in *Am. Fin. Servs. Assn. v. Cleveland*, 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776:

> [T]he constitutional provision as adopted gave municipalities the exclusive power to govern themselves, as well as additional power to enact local health and safety measures not in conflict with general laws, [but] "exclusive state power was retained in those areas where a municipality would in no way be affected or where state dominance seemed to be required."
>
> *Id.* at ¶ 27, quoting Vaubel, *Municipal Home Rule in Ohio*, at 1107-1108 (1978).

{¶12} The Ohio Supreme Court has set forth a three-step process for evaluating

conflicts under the home-rule amendment. *Ohioans for Concealed Carry, Inc. v. Clyde*, 120 Ohio St.3d 96, 2008-Ohio-4605, 896 N.E.2d 967, ¶ 24, citing *Am. Fin. Servs. Assn. v. Cleveland*, 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776. A state statute takes precedence over a local ordinance when "(1) the ordinance is an exercise of the police power, rather than of local self-government, (2) the statute is a general law, and (3) the ordinance is in conflict with the statute." *Cleveland v. Ohio*, 128 Ohio St.3d 135, 2010-Ohio-6318, 942 N.E.2d 370, ¶ 10, quoting *Mendenhall v. Akron*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, ¶ 17. Where the statute fails to meet all of these conditions, it is not a general law, and, as such, it must yield to the municipal ordinance in question. *Cleveland v. Ohio*, 8th Dist. No. 97679, 2012-Ohio-3572, 974 N.E.2d 123, ¶ 19, citing *Canton v. Ohio*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963.

{¶13} In the present case, it is undisputed that the first part of the home rule test is satisfied in that CCO 241.42 is an exercise of the municipality's police power. Similarly, there is little dispute among the parties as to the conflict between R.C. 3717.53 and CCO 241.42. "In determining whether an ordinance is in 'conflict' with general laws, the test is whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa." *Am. Fin. Servs. Assn. v. Cleveland*, 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776, ¶ 40, quoting *Struthers v. Sokol*, 108 Ohio St. 263, 140 N.E. 519 (1923), at paragraph two of the syllabus.

{¶14} The ban on industrially-produced trans fats pursuant to CCO 241.42 is

plainly in conflict with R.C. 3717.53(C)(3), which broadly disallows municipal bans on food at food service operations based on food nutrition information. Additionally, the enforcement provisions under CCO 241.42 conflict with R.C. 3717.53(B)'s delegation of "sole and exclusive authority" to the director of agriculture to regulate the provision of food nutrition information at food service operations in Ohio and the prohibition of municipal legislation relating to the provision of food nutrition information at food service operations contained in R.C. 3717.53(C)(1).

{¶15} The state further argues that CCO 241.42 conflicts with nutrition labeling regulations promulgated under Revised Code Chapter 3717 and contained within Ohio Adm.Code 3717-1-03.5(C)(4). Specifically, Ohio Adm.Code 3717-1-03.5(C)(4) exempts bulk, unpackaged foods and foods portioned to consumer specification, from certain labeling requirements. However, the documentation provisions of CCO 241.42(c) touch upon food labels only in instances where such labels are already required by Ohio and federal law. CCO 241.42(c)(2). In instances where such labels are not required under Ohio law, CCO 241.42(c) provides alternative documentation avenues that do not create any new labeling requirements and conflict only with the previously discussed broad grant of authority in favor of the director of agriculture over "food nutrition information" found in R.C. 3717.53(B).

{¶16} As the first and third prongs of the home rule test are satisfied we next examine whether R.C. 3717.53 constitutes a general law.

**{¶17}** "A general law has been described as one which promotes statewide uniformity." *Ohio Assn. of Private Detective Agencies, Inc. v. N. Olmsted*, 65 Ohio St.3d 242, 244, 1992-Ohio-65, 602 N.E.2d 1147. "Once a matter has become of such general interest that it is necessary to make it subject to statewide control as to require uniform statewide regulation, the municipality can no longer legislate in the field so as to conflict with the state." *State ex rel. McElroy v. Akron*, 173 Ohio St. 189, 194, 181 N.E.2d 26 (1962).

**{¶18}** The Ohio Supreme Court has adopted a four-part test for determining whether a statute is a general law for purposes of home-rule analysis. The statute must

> (1) be part of a statewide and comprehensive legislative enactment, (2) apply to all parts of the state alike and operate uniformly throughout the state, (3) set forth police, sanitary, or similar regulations, rather than purport only to grant or limit legislative power of a municipal corporation to set forth police, sanitary or similar regulations, and (4) prescribe a rule of conduct upon citizens generally.

*Canton v. State*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, syllabus.

### 1. Statewide and Comprehensive Legislative Enactment

**{¶19}** In determining whether a challenged statute is part of a comprehensive, statewide scheme or plan, courts look to the range of activity subject to regulation under the enactment and whether it serves a statewide concern. *Cleveland v. Ohio*, 8th Dist. No. 97679, 2012-Ohio-3572, 974 N.E.2d 123, ¶ 23, citing *Clermont Environmental Reclamation Co. v. Wiederhold*, 2 Ohio St.3d 44, 48, 442 N.E.2d 1278 (1982); *Ohioans for Concealed Carry, Inc. v. Clyde*, 120 Ohio St.3d 96, 2008-Ohio-4605, 896 N.E.2d 967.

A comprehensive enactment need not regulate every aspect of disputed conduct, nor must it regulate that conduct in a particularly invasive fashion. *Cleveland v. Ohio*, 128 Ohio St.3d 135, 2010-Ohio-6318, 942 N.E.2d 370, ¶ 21 (holding that the fact that regulations of firearms appear in various code chapters does not nullify the fact that they are all part of a comprehensive enactment). The section of law at issue should not be read and interpreted in isolation from the other sections of the Revised Code dealing with the subject matter. *Id.* at ¶ 22.

{¶20} The state argues that R.C. 3717.53 constitutes one part of a statewide comprehensive legislative scheme regulating retail food establishments and food service operations. R.C. 3717.01(F) defines "food service operations" as "a place * * * where food intended to be served in individual portions is prepared or served for a charge * * *." A retail food establishment is defined in R.C. 3717.01(C) as "a premises * * * where food is stored, processed, prepared, manufactured, or otherwise held or handled for retail sale." R.C. 3717.04 provides the Ohio directors of agriculture and health with "the exclusive power in this state to adopt rules regarding retail food establishments and food service operations." R.C. 3717.02 establishes a retail food safety advisory council which, pursuant to R.C. 3717.03, examines specific food safety issues and makes recommendations regarding the same.

{¶21} Pursuant to R.C. 3717.05, the "Uniform Food Safety Code," Ohio's directors of agriculture and health are charged with the duty of adopting rules establishing

standards for safe food handling and sanitation in retail food establishments and food service operations. The directors are additionally charged with the licensing of retail food establishments and food service operations in Ohio. R.C. 3717.01(O)(2) and (3); R.C. 3717.21; R.C. 3717.41.

{¶22} There is no dispute among the parties that Ohio law, in part through the adoption of federal law, heavily regulates in the area of food labeling. As succinctly stated by the Second Circuit Court of New York, "the federal statutory scheme regulating labeling and branding of food is a labyrinth and interpreting the statute are a series of agency regulations that sometimes appear to conflict and are difficult to harmonize." *N.Y. State Restaurant Assn. v. N.Y. City Bd. of Health*, 556 F.3d 114, 117 (2d Cir. N.Y. 2009).

{¶23} Ohio Adm.Code 3717-1-03.5 delineates rules for the labeling of food and the adoption of federal labeling standards. In regard to food packaged in a food service operation or retail food establishment, Ohio Adm.Code 3717-1-03.5(C) requires such food to be labeled in conformity with federal rules contained within 21 C.F.R. 101 and 9 C.F.R. 317. The required label information includes the common name of the food, a list of ingredients, the quantity, the name and place of business of the manufacturer, certain allergin information and nutrition labeling as specified in the above federal code chapters. Ohio Adm.Code 3717-1-03.5(C)(2). As discussed above, Ohio Adm.Code 3717-1-03.5(C)(4) provides certain exemptions for bulk, unpackaged foods such as

bakery products and unpackaged foods that are portioned to consumer specification, such as restaurant food. *See also* 21 U.S.C. 343(q)(5)(A). In regard to trans fats specifically, 21 C.F.R. 101.9(c)(2)(ii) requires trans fat disclosure on nutrition labeling. However restaurants are exempt from such labeling under 21 C.F.R. 101.9(j)(2)(i).

{¶24} Within the context of the above laws, Ohio asserts that R.C. 3717.53 is but one part of the General Assembly's comprehensive regulatory scheme over the safety, content, nutrition, labeling and fair presentation of food. The city agrees that Ohio's regulation of food service operations and retail food establishments covers food safety and sanitation, inspections, licensing and labeling but rejects the state's contention that the General Assembly has enacted a comprehensive legislative scheme with respect to food content. Additionally, the city notes that Ohio has not adopted any rules under R.C. 3717.53 with regard to food nutrition information beyond the extensive consumer labeling requirements discussed above.

{¶25} Ohio law is largely devoid of specific food content regulation such as that found in CCO 241.42. Indeed, the state cites only three statutes concerning any form of content regulation and those statutes are narrowly limited to the specific regulation of dairy products (R.C. 917.02; R.C. 917.05), certain beverages (R.C. 913.24) and the vitamin and mineral content of certain bakery products (R.C. 911.33; R.C. 911.32).

{¶26} The state likens the present case to the situation addressed by the Ohio Supreme Court in *Cleveland v. Ohio*, 128 Ohio St.3d 135, 2010-Ohio-6318, 942 N.E.2d

370, wherein the court upheld Ohio's regulation of firearms under R.C. 9.68 as a valid general law and struck down Cleveland ordinances seeking to impose certain stricter firearm regulations. The court upheld R.C. 9.68 as a statewide and comprehensive legislative enactment, in part, based upon its placement in the context of "a host of state and federal laws regulating firearms." *Id*. at ¶ 17. The state presently asserts that R.C. 3717.53's provisions preempting municipal authority in the area of food content regulation and documentation are but one part of a broader legislative scheme regulating all aspects of food service operations and retail food establishments including food content. In light of the relative void of food content regulation under Ohio law, we cannot agree. In the present case we do not have statewide comprehensive legislation regarding the content of food served in restaurants. Neither Ohio nor federal law specifically prohibit or allow for industrially-produced trans fat content in food. Instead, we are confronted with a broad, flat ban by the General Assembly prohibiting municipalities from exercising their police powers in this area. We conclude that R.C. 3717.53 is not a part of a statewide and comprehensive legislative enactment.

*2. Uniform Operation Throughout the State*

{¶27} General laws must "apply to all parts of the state alike." *Canton*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, at ¶ 13, quoting *Schneiderman v. Sesanstein*, 121 Ohio St. 80, 82-83, 167 N.E. 158 (1929).

{¶28} The state correctly points out that R.C. 3717.53 applies to all parts of the

state without exception. We are troubled, however, by the statute's inexplicable failure to address retail food establishments. In stark contrast to other broad provisions of Ohio's regulation of the food industry, by its terms, R.C. 3717.53 applies only to food service operations. This strange oversight results in an inconsistent result: municipalities are free from the strict regulatory restrictions of R.C. 3717.53(C) in regard to retail food establishments. The state offers no explanation for this arbitrary distinction. In light of this bizzare coverage gap we cannot say that R.C. 3717.53 has a uniform application throughout the state.[1]

### 3. Establishes Police Regulations Rather Than Granting or Limiting Municipal Legislative Power

**{¶29}** We next consider whether R.C. 3717.53 sets forth police, sanitary, or similar regulations or instead, simply purports only to grant or limit legislative power of a municipal corporation to set forth police, sanitary, or similar regulations. *Ohioans for Concealed Carry, Inc. v. Clyde*, 120 Ohio St.3d 96, 2008-Ohio-4605, 896 N.E.2d 967, ¶ 49. A statute does not qualify as a general law if it merely restricts the ability of a municipality to enact legislation. *Am. Fin. Servs. Assn. v. Cleveland*, 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776, ¶ 35.

---

[1]Amici Curiae Changelab Solutions and Public Health Law Center further argue that any state law such as R.C. 3717.53(C), which prevents individual municipalities from acting to address food based health disparities resulting from local social, demographic, environmental and geographic attributes inevitably impacts different parts of the state in a non-uniform manner. Although not addressed by either of the parties and not a basis of our conclusion here, we find some merit in this argument.

{¶30}   The state argues that, taken as a whole with other Ohio statutes, R.C. 3717.53 regulates food nutrition labeling, a valid exercise of police power and is but one part of a statewide and comprehensive legislative system that uniformly prescribes a rule of conduct upon the food industry with respect to food content, nutrition, labeling, presentation and safety.   We cannot agree.   R.C. 3717.53's operation extends far beyond the regulation of food labeling cited by the state and found within Ohio Adm.Code 3717-1-03.5.   By its own terms R.C. 3717.53 preempts any regulatory action by a municipality in the realm of food content without providing for any regulation of its own.  By failing to set forth any regulation of this topic, R.C. 3717.53's function is to preempt municipal legislative action and maintain a regulatory void in regard to food content.

{¶31} Furthermore, the statute's broad definition of "food nutrition information" expands its application far beyond mere food labeling laws and operates to preempt municipal enforcement of food content bans.   The state points to no legislation or rules pertaining to the documentation of trans fat content in unpackaged foods.   This court finds there to be a significant difference between labeling requirements for food items designed for consumer examination, an area in which the state and federal governments have extensively regulated, and food nutrition documentation such as that required by CCO 241.42.   The flexible documentation requirement found in CCO 241.42 is comparatively unobtrusive, imposes an exponentially smaller burden than individual labeling requirements upon the food industry and exists to service municipality law

enforcement rather than consumers.

**{¶32}** As Ohio has adopted no substantive legislation or rules in regard to these aspects of food nutrition information and food content regulation, the provisions in R.C. 3717.53 can only be viewed as an attempt by the General Assembly to employ broad language to defeat the city's home rule authority in this area. R.C. 3717.53 is "simply a limit on the legislative powers of municipal corporations to adopt and enforce specified police regulations." *Linndale v. Ohio*, 85 Ohio St.3d 52, 55,1999-Ohio-434, 706 N.E.2d 1227. Therefore, we conclude that the preemption language simply curtails the city's police powers in this area and does not meet the third element of the *Canton* test.

*4. Prescribes a Rule of Conduct Upon Citizens Generally*

**{¶33}** Finally, a general law must "prescribe a rule of conduct upon citizens generally." *Am. Fin. Servs. Assn.*, 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776, ¶ 36. Statutes that go beyond merely limiting municipal authority and establish a rule of conduct for those who are the subject of the legislation have satisfied this element of the *Canton* test. *Cleveland v. Ohio*, 8th Dist. No. 97679, 2012-Ohio-3572, 974 N.E.2d 123, ¶ 40.

**{¶34}** The state argues that R.C. 3717.53 prescribes a rule of conduct upon the citizens of Ohio with respect to food nutrition information and food safety and pertains to all food service operations and retail food establishments. As previously noted, R.C. 3717.53 neglects to mention retail food establishments. Furthermore, beyond the food

labeling regulations promulgated under the Revised Code Chapter 3717, the statute fails to prescribe any rule of conduct upon the citizens of Ohio in regard to the broader topics of food nutrition information and food content that it purports to regulate. As such the statute fails the fourth prong of the general law test.

{¶35} In accordance with the foregoing, R.C. 3717.53 does not meet the test set forth in *Canton* so we conclude that it is not a general law. Further, because R.C. 3717.53 is not a general law, it unconstitutionally attempts to limit municipal home-rule authority. Appellant's first, second and third assignments of error are overruled.

{¶36} The state asserts in its fourth assignment of error that the trial court erred in holding the amendments to R.C. 3717.53 in Am. Sub. H.B. 153 to be a violation of the one-subject rule of the Ohio Constitution.

{¶37} The one-subject rule is contained in Section 15(D), Article II of the Ohio Constitution, which provides, "No bill shall contain more than one subject, which shall be clearly expressed in its title." This provision exists to prevent the legislature from engaging in "logrolling," i.e., "the practice of several minorities combining their several proposals as different provisions of a single bill and thus consolidating their votes so that a majority is obtained for the omnibus bill where perhaps no single proposal of each minority could have obtained majority approval separately." *State v. Bloomer*, 122 Ohio St.3d 200, 2009-Ohio-2462, 909 N.E.2d 1254, ¶ 47, quoting *State ex rel. Dix v. Celeste*, 11 Ohio St.3d 141, 142-143, 464 N.E.2d 153 (1984).

**{¶38}** A reviewing court's role in the enforcement of the one-subject provision is limited. As explained by the Ohio Supreme Court,

> [t]o avoid interfering with the legislative process, we must afford the General Assembly "great latitude in enacting comprehensive legislation by not construing the one-subject provision so as to unnecessarily restrict the scope and operation of laws, or to multiply their number excessively, or to prevent legislation from embracing in one act all matters properly connected with one general subject."

*State ex rel. Ohio Civ. Serv. Emps. Assn., AFSCME, Local 11, AFL-CIO v. State Emp. Relations Bd.*, 104 Ohio St. 3d 122, 2004-Ohio-6363, 818 N.E.2d 688, ¶ 27, quoting *Dix*, 11 Ohio St.3d at 145, 464 N.E.2d 153 (1984). Every presumption in favor of the enactment's validity should be indulged. *Hoover v. Franklin Cty. Bd. of Commrs.*, 19 Ohio St.3d 1, 6, 482 N.E.2d 575 (1985).

**{¶39}** To this end, only "[a] manifestly gross and fraudulent violation of the one-subjection provision contained in Section 15(D), Article II of the Ohio Constitution will cause an enactment to be invalidated." *State v. Bloomer*, 122 Ohio St. 3d 200, 2009-Ohio-2462, 909 N.E.2d 1254, ¶ 49, citing *In re Nowak*, 104 Ohio St.3d 466, 2004-Ohio-6777, 820 N.E.2d 335, paragraph one of the syllabus. As long as common purpose or relationship exists between the topics, the mere fact that a bill embraces more than one topic will not be fatal. *Id.* It is the disunity of subject matter, rather than the aggregation of topics, that cause a bill to violate the one-subject rule. *Id.* The one-subject rule is not directed at plurality but at disunity in subject matter. *State ex rel. Ohio Civ. Serv. Emp. Assn. v. State Emp. Relations Bd.*, 104 Ohio St.3d 122,

2004-Ohio-6363, 818 N.E.2d 688, ¶ 28.

{¶40} In the present instance, we are called upon to examine an alleged violation of the one-subject rule within the context of an appropriations bill. H.B. 153 is Ohio's biannual budget bill for July 1, 2011 through June 30, 2013. "The analysis of the one-subject rule with respect to appropriation bills can be complicated because appropriations bills 'encompass many items, all bound by the thread of appropriations.'" *Rumpke Sanitary Landfill, Inc. v. Ohio*, 184 Ohio App.3d 135, 2009-Ohio-4888, 919 N.E.2d 826, ¶ 16 (1st Dist.2009) quoting *Simmons-Harris v. Goff*, 86 Ohio St.3d 1, 1999-Ohio-77, 711 N.E.2d 203.

{¶41} The Ohio Supreme Court in *Simmons-Harris*, struck down the Ohio School Voucher Program pursuant to the one-subject rule because there was a blatant disunity between the program and the other items contained within the appropriations bill such that the program was little more than a rider. *Simmons-Harris v. Goff*, 86 Ohio St.3d 1, 39, 1999-Ohio-77, 711 N.E.2d 203. In *Rumpke*, the First District struck down revisions to certain Ohio Revised Code sections contained within an appropriations bill because the record contained no evidence of the effect of the revisions on the state's biennial budget. *Rumpke*. The court in *Rumpke* relied upon the Ohio Supreme Court's decision in *State ex rel. Ohio Civ. Serv. Emp. Assn. v. State Emp. Relations Bd.*, 104 Ohio St.3d 122, 2004-Ohio-6363, 818 N.E.2d 688, wherein the court struck down a revised code revision rider to an appropriations bill due to disunity between the budget related

items and the revision as well as a lack of evidence in the record offering "any explanation whatever as to the manner in which [the amendment] will clarify or alter the appropriation of state funds." *Id*. at ¶ 34. The court rejected the argument that "a provision that impacts the state budget, even if only slightly, may be lawfully included in an appropriations bill merely because other provisions in the bill also impact the budget," explaining that, "[s]uch a notion, however, renders the one-subject rule meaningless in the context of appropriations bills because virtually any statute arguably impacts the state budget, even if only tenuously." *Id*. at ¶ 33.

{¶42} The stated purpose of H.B. 153 is to amend, repeal, and enact provisions of the Revised Code; "to make operating appropriations for the biennium beginning July 1, 2011, and ending June 30, 2013; and to provide authorization and conditions for the operation of programs, including reforms for the efficient and effective operation of state and local government." Am. Sub. H.B. 153. The massive budget bill has been compared by the Cleveland Plain Dealer to a "junk drawer," i.e. "a place to stow * * * odds and ends that you just don't know what else to do with." Thomas Suddes, *Ohio Budget Is Full Of Political 'Extras,'* The Plain Dealer, (May 07, 2011), http://www.cleveland.com/opinion/index.ssf/2011/05/ohio_budget_is_full_of_politic.html (accessed Jan. 9, 2013).

{¶43} We also have concerns regarding the process behind how the amendments were passed. In response to the city of Cleveland's trans-fats Ordinance, the Ohio

Restaurant Association ("ORA") sent an email to the Ohio Department of Agriculture with an attached legislative proposal. The email stated that the Ordinance was "exactly what we want to preempt with the attached amendment." The email also stated that the amendment was "a high priority for Wendy's, McDonalds and YUM!."[2] According to the email, a senator had already been given a copy of ORA's proposed legislation and would offer it in the Senate Finance Committee. Thus, the amendments were drafted on behalf of a special interest group with the specific purpose of snuffing out the Ordinance.

{¶44} The amendments were tucked away in Am. Sub. H.B. 153, the state's appropriations act for the 2011-2013 Biennium ("the appropriations bill") and were not vetted by the usual committee process.[3] The House did not vote on the amendments, because the House had already passed the appropriations bill before the amendments were inserted into the bill. There were no hearings on the amendments in any of the House Committees, nor in any Senate Committee. Although the amendments will impact the health of Ohioans, there was no testimony to any legislative committees from any nutritionist, dietician, or any kind of other health care professional explaining the health

---

[2]YUM! Brands, Inc. operates or licenses Taco Bell, KFC, and Pizza Hut.

[3]The appropriations bill could also be called a "Christmas tree bill" because "the amendments which adorn the bill may provide special benefits to various groups or interests." United States Senate Glossary of Terms http://www.senate.gov/ reference/glossary_term/christmas_tree_bill.htm (accessed Feb. 25, 2013).

effects of trans fats. Similarly, there was no testimony presented by ORA or from the fast-food restaurants whose interests were being represented by ORA. The amendments constitute a rider taking up less than two pages of an appropriations bill in excess of 3,000 pages.

{¶45} The facts giving rise to the birth of the amendments, coupled with the lack of a nexus between the amendments and the appropriations bill, create a strong suggestion that the provisions were combined for tactical reasons. The amendments in this case present us with a classic instance of impermissible logrolling. *See State ex rel. Dix v. Celeste*, 11 Ohio St.3d 141, 145, 464 N.E.2d 153 (1984). We find that the amendments do not constitute a general law and violate the single-subject rule.

{¶46} With regard to R.C. 3717.53, H.B. 153 amended that section to expand the definition of "food nutrition information" to also include "the designation of food as healthy or unhealthy." H.B. 153 expanded R.C. 3717.53(B)'s authority over food nutrition information to include "how food service operations are characterized." H.B. 153 additionally expanded R.C. 3717.53(C)'s limitations on political subdivision police power by adding new provisions found in R.C. 3717.53(C)(2)-(5), including, relevant to the present case, R.C. 3717.53(C)(3)'s disallowance of municipal bans or restriction on food at food service operations based on the food nutrition information. Finally, H.B. 153 additionally amended R.C. 3717.53 to regulate consumer incentive items at food service operations.

**{¶47}** These substantive amendments to R.C. 3717.53 are incongruously preceded within H.B. 153 by the enactment of R.C. 3709.341 that allows a board of county commissioners to donate or sell property, buildings and furnishings to any board of health to be used as quarters by the board of health and provides restrictions upon the associated conveyance instruments. The revised code sections amended directly after R.C. 3717.53's amendments bear even less relation to the subject matter of R.C. 3717.53, because it is followed by amendments to R.C. 3719.141 that regulate sales of controlled substances by peace officers, and R.C. 3721.01, the definitional section for R.C. Chapter 3721, which pertains to the regulation of nursing homes and residential care facilities.

**{¶48}** There is no dispute among the parties that the amendments to R.C. 3717.53 have absolutely no impact upon the state budget during the biennium period covered by H.B. 153. Instead, the state argues that the single subject of H.B. 153 is to provide authorization and conditions for the operations of programs and to make operating appropriations to fund them. However, the state offers no argument as to how the amendments to R.C. 3717.53, that operate solely to limit municipal police power, touch upon this subject.

**{¶49}** The state argues instead that the amendments to R.C. 3717.53 operate in conjunction with the vast array of subjects touched upon by H.B. 153 all under the broad common thread of providing reforms for the efficient and effective operation of state and local government. To this end the state argues that the restrictions upon municipal

police power contained within the amendments to R.C. 3717.53 operate to alleviate local municipal expenditures and aid municipal budgets by eliminating municipal police power in the area. However, the record contains no evidence that the relatively minor documentation and enforcement provisions of local trans fat bans such as CCO 241.42 would require significant, if any, additional municipal funding.

{¶50} Although the state cites to no specific evidence in the record as to municipal budgetary costs that could be reduced by H.B. 153, the state essentially argues that in theory, H.B. 153 will operate to reduce such potential costs by eliminating municipal police power as addressed above. Under this logic, the state asserts that the revisions to R.C. 3717.53 do not violate the one-subject rule because they are but one part of a broad effort within H.B. 153 to reduce municipal costs and streamline government services.

{¶51} The state's argument in this regard is akin to the appropriations bill concern addressed by the Ohio Supreme Court in *State ex rel. Ohio Civ. Serv. Emp. Assn. v. State Emp. Relations Bd.*, 104 Ohio St.3d 122, 2004-Ohio-6363, 818 N.E.2d 688. As in that case, the state's argument here would render the one-subject rule meaningless in the context of appropriations bills because, as the court warned, "virtually any statute arguably impacts the state budget, even if only tenuously." *Id*. at ¶ 33. We are deeply concerned with the broad scope of the state's argument here. Under the state's logic, every subject matter statewide that conceivably can be connected to a dollar of not merely

state funding but also municipal spending could be substantively regulated in a single appropriations bill. We are reminded of the Ohio Supreme Court's concern for such broad logical connections expressed in *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 1999-Ohio-123, 715 N.E.2d 1062. In that case, the court struck down a bill broadly addressing topics under the umbrella of "laws pertaining to tort and other civil actions." *Id*. at 494. The court addressed its concern for bills covering a vast scope of topics all tenuously tied together, stating, "[i]f we accept this notion, the General Assembly could conceivably revamp all Ohio law in two strokes of the legislative pen — writing once on civil law and again on criminal law. The thought of it is staggering." *Id*. at 499.

{¶52} Although we accept, in theory, the state's premise that the amendments to R.C. 3717.53 could *potentially* impact the budgets of municipalities, we reject the concept that such a tenuous, tangential link can serve as the unifying thread between amendments that substantively eliminate municipal police powers over an area concerning public health and an appropriations bill. The application of such logic would eviscerate the one-subject rule in the context of appropriations bills.

{¶53} We similarly reject the state's argument that the present case is analogous to the one-subject rule challenge we addressed in *Solon v. Martin*, 8th Dist. No. 89586, 2008-Ohio-808. In that case, we were confronted with the enactment of a revised code section that barred Ohio courts from granting limited driving privileges for the operation

of commercial motor vehicles to any person whose license was suspended. The statute was enacted within the biennial budget bill for 2006-2007. We rejected a one-subject rule challenge to the statute because it was enacted pursuant to a federal mandate and had the state not complied with the mandate, the state would have lost a significant portion of its federal highway funding. *Id*. at ¶ 22-23. In that case, the connection between the somewhat anomalous statute and the state budget was crystal clear. The present case lacks the rational connection between the revisions to R.C. 3717.53 and any legitimate budgetary concerns. Instead, the revisions that concern important local health questions appear to be stealthily attached as a rider to an appropriations bill assured of adoption.

{¶54} The revisions to R.C. 3717.53 are not related to the common purpose of H.B. 153 and we therefore affirm the trial court's holding that such provision violates Section 15(D), Article II of the Ohio Constitution.

{¶55} Appellant's fourth assignment of error is overruled.

{¶56} The judgment of the trial court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said lower court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____
EILEEN A. GALLAGHER, JUDGE

MELODY J. STEWART, A.J., and
KENNETH A. ROCCO, J., CONCUR