[Cite as *Kljun v. Morrison*, 2016-Ohio-2939.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103292**

## JEFFREY KLJUN, ET AL.

PLAINTIFFS-APPELLANTS

vs.

## SARAH MORRISON, ADMINISTRATOR, OHIO BUREAU OF WORKERS' COMPENSATION, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-13-803120

**BEFORE:** Kilbane, P.J., McCormack, J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** May 12, 2016

**ATTORNEYS FOR APPELLANTS**

Richard F. Brian
Brian & Brian
81 Maplecrest Street, SW
North Canton, Ohio    44720

Paul W. Flowers
Paul W. Flowers Co., L.P.A.
Terminal Tower, Suite 1910
50 Public Square
Cleveland, Ohio 44113

Frank L. Gallucci
Plevin & Gallucci Co., L.P.A.
55 Public Square, Suite 2222
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEES**

Mike DeWine
Ohio Attorney General

By: Cheryl J. Nester
Assistant Attorney General
150 E. Gay Street - 22nd Floor
Columbus, Ohio 43215

Jeffrey B. Duber
Mark E. Mastrangelo
Assistant Attorneys General
State Office Building - 11th Floor
615 West Superior Avenue
Cleveland, Ohio 44113

MARY EILEEN KILBANE, P.J.:

{¶1} Plaintiffs-appellants, Jeffrey Kljun, Reginald D. Humphrey, Robert Grable, Michael J. Dunlap, Jonathan J. Marazza, and Louis Cataldo, Sr. (collectively referred to as "plaintiffs"), appeal from the trial court's decision granting summary judgment in favor of defendants-appellees, Sarah Morrison,[1] Administrator, Ohio Bureau of Workers' Compensation ("BWC") and The Industrial Commission of Ohio (collectively referred to as "defendants"). For the reasons set forth below, we reverse the judgment entered in favor of defendants and remand with instructions for the trial court to enter summary judgment in favor of plaintiffs.

{¶2} The instant appeal arises from the passage of the 2012 Mid-Biennium Budget Review Bill, 2012 H.B. 487 ("H.B. 487"), and its impact on how "scheduled loss" payments are issued under R.C. 4123.57 to injured workers participating in the BWC. The stated purpose of H.B. 487 is "to make operating and other appropriations and to provide authorization and conditions for the operation of state programs[.]" R.C. 4123.57(B) provides the schedule for the benefits paid to injured workers who have lost limbs, appendages, and other organs in work-related accidents.

{¶3} Prior to the passage of H.B. 487, the BWC allowed injured workers to be

---

[1]The original caption of this case was "Steve Buehrer, Administrator, Ohio Bureau of Workers' Compensation, et al." In accordance with App.R. 29(C), the court substitutes Sarah Morrison, the present administrator, for Steve Buehrer.

paid the entire scheduled loss benefit in a lump sum. The injured worker did not have to wait the full number of weeks specified by statute in order to receive the entire scheduled loss. In September 2010, R.C. 4123.57(B) was revised by H.B. 487. Under the revisions, scheduled loss payments are now issued in weekly installments, for up to a decade or more, instead of a single lump-sum payment.

{¶4} In March 2013, plaintiffs filed their complaint against defendants seeking a declaration that H.B. 487 violates the Ohio Constitution, Article II, Section 15(D) (known as the "one-subject rule"), which provides that "[n]o bill shall contain more than one subject, which shall be clearly expressed in its title." Plaintiffs also sought a permanent injunction against any further enforcement of the invalid provisions.

{¶5} Plaintiffs allege that they each sustained injuries in the course and scope of their employment, entitling them to workers' compensation benefits under R.C. 4123.57(B). Specifically, Kljun suffered serious bone and spine fractures and was rendered a paraplegic. Humphrey sustained the loss of use of his right foot. Grable lost his index finger, thumb, and one-third of his ring finger. Dunlap sustained the loss of use of two fingers. Marazza lost several fingers and a significant portion of his left hand. Cataldo suffered the amputation of his left leg.

{¶6} With the passage of H.B. 487, plaintiffs allege they will be forced to wait for a substantial period to receive their full benefits. Plaintiffs further allege that in addition to affecting the payment of scheduled loss benefits, H.B. 487 also affects a wide range of other topics, including:

[T]he publication of legal notices and advertisements (R.C. 7.10 and 7.16); the creation of a legislative task force on redistricting, reapportionment, and demographic research (R.C. 103.51); eligibility standards and procedures for programs administered by the Department of Aging, Department of Alcohol and Drug Addiction Services, Department of Development, Department of Developmental Disabilities, Department of Education, Department of Health, Department of Job and Family Services, Department of Mental Health, and Rehabilitation Services Commission (R.C. 121.35); the establishment of the SellOhio Global Initiative Fund (R.C. 122.862); the addition of the State Fire Marshall or the State Fire Marshall's designee to the Multi-agency Radio Communications System Steering Committee (R.C. 701.50); a request to the Joint Committee on the Library of Congress to approve the replacement of the statute of Former Governor William Allen in the National [Statuary] Hall Collection with a statue of Thomas Edison (R.C. 701.121(A)), revisions to the Court of Claims Act and related issues concerning claims for wrongful imprisonment (R.C. 2743.40), and authorization for the Director of Department of Public Safety to approve an online remedial driving course (R.C. 4508.02).

{¶7} By regulating the manner in which scheduled loss benefits are paid by the BWC, and a wide variety of unrelated public issues, plaintiffs allege that H.B. 487, which consists of 1,788 pages, lacks a common purpose or objective. As a result, plaintiffs sought a declaration that the legislative attempt to amend R.C. 4123.57(B) through H.B. 487 is a violation of the Ohio Constitution, Article II, Section 15(D), and unenforceable.

{¶8} In response, defendants filed a motion to dismiss and change of venue, arguing that: (1) only Franklin County courts are competent to adjudicate actions against state officials; and (2) plaintiffs failed to allege a claim for declaratory or injunctive relief. Plaintiffs opposed, and the trial court overruled the motion. Defendants then submitted an answer denying that plaintiffs are entitled to any relief. After the conclusion of discovery, both parties submitted motions for summary judgment. Plaintiffs argued that the revisions to R.C. 4123.57(B) are not related to defendants' appropriations or budgets,

and had been concealed within the 2012 Mid-Biennium Budget Review Bill in violation of the Ohio Constitution's one-subject clause. On the other hand, defendants argued plaintiffs failed to name necessary parties to the action and R.C. 4123.57(B) does not violate the one-subject rule. The trial court granted summary judgment in favor of defendants, finding that H.B. 487 complies with the one-subject rule. The court stated "[i]n this case, there is a unity between the budget related items and the revision to R.C. 4123.57(B), which amended how partial disability compensation awards are dispersed."

{¶9} Plaintiffs now appeal, raising the following single assignment of error for review.

## Assignment of Error

The trial judge erred, as a matter of law, by determining that the portion of the Mid-Biennium Budget Review Bill, 2012 H.B. 487, requiring permanently disabled and disfigured workers to wait years, if not decades, for their scheduled loss benefits complies with the one subject rule set forth in Section 15(D), Article II, of the Ohio Constitution.

{¶10} In their sole assignment of error, plaintiffs argue that the trial court erred, as a matter of law, when it determined that H.B. 487 complies with the one-subject rule and granted summary judgment in favor of defendants.

## Standard of Review

{¶11} We review an appeal from summary judgment under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241; *Zemcik v. LaPine Truck Sales & Equip. Co.*, 124 Ohio App.3d 581, 585, 706 N.E.2d 860 (8th Dist.1998). In *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367,

369-370, 1998-Ohio-389, 696 N.E.2d 201, the Ohio Supreme Court set forth the appropriate test as follows:

> Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 1995-Ohio-286, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107, 662 N.E.2d 264.

{¶12} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385, 1996-Ohio-389, 667 N.E.2d 1197. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 1992-Ohio-95, 604 N.E.2d 138.

## One-Subject Rule

{¶13} The one-subject rule is set forth in the Ohio Constitution, Article II, Section 15(D), and provides that "[n]o bill shall contain more than one subject, which shall be clearly expressed in its title." The universally recognized purpose of this rule is to prevent the legislature from engaging in "logrolling" — "'the practice of several minorities combining their several proposals as different provisions of a single bill and

thus consolidating their votes so that a majority is obtained for the omnibus bill where perhaps no single proposal of each minority could have obtained majority approval separately.'" *State ex rel. Dix v. Celeste*, 11 Ohio St.3d 141, 464 N.E.2d 153 (1984), quoting 1A Sutherland, *Statutes and Statutory Construction* (4th Ed.1972), Section 17.01.

{¶14} A reviewing court's role in the enforcement of the one-subject provision is limited. To avoid interfering with the legislative process, a reviewing court must afford the General Assembly

> "great latitude in enacting comprehensive legislation by not construing the one-subject provision so as to unnecessarily restrict the scope and operation of laws, or to multiply their number excessively, or to prevent legislation from embracing in one act all matters properly connected with one general subject."

*State ex rel. Ohio Civ. Serv. Emps. Assn., AFSCME, Local 11, AFL-CIO v. State Emp. Relations Bd.*, 104 Ohio St.3d 122, 2004-Ohio-6363, 818 N.E.2d 688, ¶ 27, quoting *Dix*.

{¶15} We recognize that "every presumption in favor of the enactment's validity should be indulged." *Hoover v. Franklin Cty. Bd. of Commrs.*, 19 Ohio St.3d 1, 6, 482 N.E.2d 575 (1985). As a result, only "[a] manifestly gross and fraudulent violation of the one-subjection provision contained in Section 15(D), Article II of the Ohio Constitution will cause an enactment to be invalidated." *In re Nowak*, 104 Ohio St.3d 466, 2004-Ohio-6777, 820 N.E.2d 335, paragraph one of the syllabus. "[A]s long as common purpose or relationship exists between the topics, the mere fact that a bill embraces more than one topic will not be fatal." *Ohio Civ. Serv. Emps. Assn.* at ¶ 28, citing *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451,

1999-Ohio-123, 715 N.E.2d 1062; *Hoover.* "[I]t is the disunity of subject matter, rather than the aggregation of topics, that causes a bill to violate the one-subject rule." *State v. Bloomer*, 122 Ohio St.3d 200, 2009-Ohio-2462, 909 N.E.2d 1254, ¶ 49, citing *Nowak*; *Sheward*; *Hoover*; and *Dix*.

{¶16} In the instant case, we must examine the alleged violation of the one-subject rule within the context of an appropriations bill — H.B. 487. H.B. 487 is known as the 2012 Mid-Biennium Budget Review Bill. The stated purpose of the bill is "to make operating and other appropriations and to provide authorization and conditions for the operation of state programs." We acknowledge that "[t]he analysis of the one-subject rule with respect to appropriation bills can be complicated because appropriations bills 'encompass many items, all bound by the thread of appropriations.'" *Rumpke Sanitary Landfill, Inc. v. Ohio*, 184 Ohio App.3d 135, 2009-Ohio-4888, 919 N.E.2d 826, ¶ 16 (1st Dist.2009), quoting *Simmons-Harris v. Goff*, 86 Ohio St.3d 1, 1999-Ohio-77, 711 N.E.2d 203.

{¶17} In the instant case, plaintiffs took the deposition testimony of Barbara Ingram ("Ingram"), a 30-year employee of the BWC and its interim Chief Fiscal and Planning Officer, and Tom Sico ("Sico"), Assistant General Counsel of the BWC. Ingram testified that she oversees the BWC's scheduled loss awards, which compensates employees who have lost limbs and other body parts. Ingram explained that from 2010 to the passage of H.B. 487 in 2012, the BWC paid scheduled losses to injured workers in a lump sum, which was not reduced to present value. According to Sico, the BWC

determined that a revision to Ohio Adm.Code 4123-3-15 was necessary to expedite the payment of scheduled loss benefits to injured workers. The rule was amended to require the amounts due to be promptly paid in a lump sum once the claim was approved under R.C. 4123.57(B) and the administrative appeals were exhausted.

{¶18} There are two types of employers within the BWC: (1) state fund employers who pay premiums to participate in the workers' compensation system and (2) larger businesses that are self-insured. The state fund is solely funded by the employers' premium payments and used to provide claimants with workers' compensation benefits and other services. As self-insureds, these companies pay their workers' claims with their own funds.

{¶19} There are approximately 1,200 self-insured employers who pay their workers' compensation benefits from their own assets. The 2010 amendment required them to issue the scheduled loss benefits in a single payment, rather than over hundreds of weeks. However, after the passage of H.B. 487, the scheduled loss benefits are paid in weekly installments and terminate upon death. As a result, the self-insured employers were entitled to keep all the remaining installments. Likewise, the payments made on behalf of the state funded employers were then returned to the state fund.

{¶20} The BWC had to revise Ohio Adm.Code 4123-3-15(C) solely in response to the passage of H.B. 487. Consequently, Sico had to prepare a Business Impact Analysis report ("BIA") to the Lieutenant Governor's Office for approval. Sico reported:

> The adverse impact of this rule is upon injured workers, not employers. In fact, small business will benefit slightly from the rule changes in that

scheduled loss compensation will not be paid in one payment, but will be paid over the weeks provided in the schedule for such payments in R.C. 4123.57(B). This change will have a small impact on the employer's workers' compensation experience, and will particularly benefit self-insured employers.

There is no significant adverse impact, other than injured workers will receive scheduled loss payments over time, rather than at once. The impact is in the time value of those payments.

{¶21} Sico explained that self-insured employers are the beneficiaries of the passage of H.B. 487. The scheduled loss benefits no longer have to be paid to the injured workers in a single lump sum, but can be spreadout over hundreds of weeks, depending on the injury. In cases of catastrophic injuries involving the loss of multiple limbs and organs, claimants must wait 15 or 16 years to reach full payment.

{¶22} Notably, the BWC's administrative expenses are paid by the participating employers' premium payments. Chief Ingram testified that the BWC "get[s] no money from the [state's] general revenue fund" to administer the state fund. The General Assembly does provide the BWC with appropriation authority, which is a limitation upon expenditures. The appropriation authority is used to set the administrative costs rates that are charged to the individual employers.

{¶23} We find the instant case analogous to a previous decision by this court in *Cleveland v. State*, 2013-Ohio-1186, 989 N.E.2d 1072 (8th Dist.). The city of Cleveland and the General Assembly enacted conflicting laws governing the labeling and sale of food to the public. The state legislature, in H.B. 153, attempted to override the city's effort, in Cleveland Codified Ordinances 241.42, to regulate products containing trans

fats. The city filed a lawsuit against the state seeking a declaration that the state law, R.C. 3717.53, violated both the home rule and one-subject provision of the Ohio Constitution. The trial court granted summary judgment in favor of the city on both contentions. The state appealed to this court. On appeal, we affirmed trial court's judgment, finding that the amendments in H.B. 153 to R.C. 3717.53 are "a classic instance of impermissible logrolling"; are not related to the common purpose of H.B. 153; and violate Section 15(D), Article II of the Ohio Constitution. *Id.* at ¶ 54 and 45, citing *Dix*, 11 Ohio St.3d at 145, 464 N.E.2d 153.

{¶24} With regard to the one-subject challenge, we noted:

> The stated purpose of H.B. 153 is to amend, repeal, and enact provisions of the Revised Code; "to make operating appropriations for the biennium beginning July 1, 2011, and ending June 30, 2013; and to provide authorization and conditions for the operation of programs, including reforms for the efficient and effective operation of state and local government." Am. Sub. H.B. 153. The massive budget bill has been compared by the Cleveland Plain Dealer to a "junk drawer," i.e. " a place to stow * * * odds and ends that you just don't know what else to do with." Thomas Suddes, *Ohio Budget Is Full Of Political 'Extras,'* The Plain Dealer, (May 07, 2011), http: //www.cleveland.com/opinion/index.ssf/ 2011/ 05/ ohio_budget_is_full_of_politc.html (accessed Jan. 9, 2013).

*Id.* at ¶ 42. We further noted:

> The amendments were tucked away in Am.Sub.H.B. 153, the state's appropriations act for the 2011-2013 Biennium ("the appropriations bill") and were not vetted by the usual committee process. The House did not vote on the amendments, because the House had already passed the appropriations bill before the amendments were inserted into the bill. There were no hearings on the amendments in any of the House Committees, nor in any Senate Committee. Although the amendments will impact the health of Ohioans, there was no testimony to any legislative committees from any nutritionist, dietician, or any kind of other health care professional explaining the health effects of trans fats. Similarly, there was

no testimony presented by ORA (Ohio Restaurant Association) or from the fast-food restaurants whose interests were being represented by ORA. The amendments constitute a rider taking up less than two pages of an appropriations bill in excess of 3,000 pages. (Footnote omitted).

*Id.* at ¶ 44.

**{¶25}** The state argued that "the single subject of H.B. 153 is to provide authorization and conditions for the operation of programs and to make operating appropriations to fund them" and "the amendments to R.C. 3717.53 operate in conjunction with the vast array of subjects touched upon by H.B. 153 all under the broad common thread of providing reforms for the efficient and effective operation of state and local government." *Id.* at ¶ 48-49. In rejecting the state's argument, we explained:

> The state's argument in this regard is akin to the appropriations bill concern addressed by the Ohio Supreme Court in *State ex rel. Ohio Civ. Serv. Emps. Assn. v. State Emp. Relations Bd.*, 104 Ohio St.3d 122, 2004-Ohio-6363, 818 N.E.2d 688. As in that case, the state's argument here would render the one-subject rule meaningless in the context of appropriations bills because, as the court warned, "virtually any statute arguably impacts the state budget, even if only tenuously." *Id.* at ¶ 33. We are deeply concerned with the broad scope of the state's argument here. Under the state's logic, every subject matter statewide that conceivably can be connected to a dollar of not merely state funding but also municipal spending could be substantively regulated in a single appropriations bill. We are reminded of the Ohio Supreme Court's concern for such broad logical connections expressed in *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 1999-Ohio-123, 715 N.E.2d 1062. In that case, the court struck down a bill broadly addressing topics under the umbrella of "laws pertaining to tort and other civil actions." *Id.* at 494. The court addressed its concern for bills covering a vast scope of topics all tenuously tied together, stating, "[i]f we accept this notion, the General Assembly could conceivably revamp all Ohio law in two strokes of the legislative pen — writing once on civil law and again on criminal law. The thought of it is staggering." *Id.* at 499.
>
> Although we accept, in theory, the state's premise that the amendments to

R.C. 3717.53 could potentially impact the budgets of municipalities, we reject the concept that such a tenuous, tangential link can serve as the unifying thread between amendments that substantively eliminate municipal police powers over an area concerning public health and an appropriations bill. The application of such logic would eviscerate the one-subject rule in the context of appropriations bills.

*Id.* at ¶ 51-52.

{¶26} In the *Cleveland* decision, 2013-Ohio-1186, 989 N.E.2d 1072 (8th Dist.), we cited to the Ohio Supreme Court's decision in *Simmons-Harris*, 86 Ohio St.3d 1, 1999-Ohio-77, 711 N.E.2d 203, and the First District's decision in *Rumpke*, 184 Ohio App.3d 135, 2009-Ohio-4888, 919 N.E.2d 826. In *Simmons-Harris*, the court struck down the Ohio School Voucher Program pursuant to the one-subject rule because there was a blatant disunity between the program and the other items contained within the appropriations bill (H.B. 117) such that the program was little more than a rider. *Id.* at 17. The School Voucher Program was enacted as part of the biennial operating appropriations bill for fiscal years 1996 and 1997, and provided scholarships to students in Cleveland to enable them to attend private schools, including religiously affiliated schools. The court reiterated that when there is an absence of common purpose or relationship between specific topics in an act and when there are no discernible practical, rational or legitimate reasons for combining the provisions in one act, there is a strong suggestion that the provisions were combined for tactical reasons, i.e., logrolling. *Id.* at 14. The court further stated that "[i]nasmuch as this was the very evil the one-subject rule was designed to prevent, an act which contains such unrelated provisions must necessarily be held to be invalid in order to effectuate the purposes of the rule." *Id.*,

citing *Dix*, 11 Ohio St.3d 141, 464 N.E.2d 153.

**{¶27}** In applying this standard, the court found considerable disunity in the subject matter between H.B. 117 and the School Voucher Program. *Id.* at 15. The court noted that H.B. 117 had numerous provisions unrelated to the voucher program, including R.C. 3.15, which concerns the residency of certain elected officials; R.C. 9.06, which enables certain government entities to contract for the private operation of correctional facilities; R.C. 101.34, which declares some files of the joint legislative ethics committee to be confidential; R.C. 102.02, which requires candidates for elective office to file financial statements with the Ethics Commission; R.C. 103.31, which creates a joint legislative committee on federal funds; and R.C. 103.32, which requires certain state agencies to submit proposals to that committee. *Id.* at 14-15. As a result, the court struck the School Voucher Program from the appropriations bill as a violation of the one-subject rule. *Id.* at 17.

**{¶28}** In *Rumpke*, the First District Court of Appeals struck down revisions to certain Ohio Revised Code sections contained within an appropriations bill because the record contained no evidence of the effect of the revisions on the state's biennial budget. *Id.* at ¶ 18. The court relied on the Ohio Supreme Court's decision in *Ohio Civ. Serv. Emps. Assn.*, 104 Ohio St.3d 122, 2004-Ohio-6363, 818 N.E.2d 688, wherein the court struck down a revision rider to an appropriations bill due to disunity between the budget related items and the revision as well as a lack of evidence in the record offering "'any explanation whatever as to the manner in which [the amendment] will clarify or alter the

appropriation of state funds.'" *Rumpke* at ¶ 17, quoting *Ohio Civ. Serv. Emps. Assn.* at ¶ 34. Unpersuaded by the state's contention that a connection could be drawn between the change in the definition and legitimate fiscal concerns, the *Rumpke* court concluded that there is no evidence of the effect of the revisions on the state's biennial budget. *Id.* at ¶ 18.

{¶29} Likewise, in the instant case, the 2012 Mid-Biennium Budget Review Bill or H.B. 487, was designed to address and modify budgets and appropriations for a number of state agencies and instrumentalities. This legislation, however, fails to reflect a meaningful relationship to R.C. 4123.57(B). The only consequence of the amendments to R.C. 4123.57(B) is that the scheduled loss benefits are now paid from either the state fund or the self-insured employers over time, rather than in a lump sum. Neither the state fund, nor the self-insured employers are financed by the General Assembly. The BWC's operating expenses are also financed by the employers. In contrast to the other agencies affected by H.B. 487, the BWC receives its funding through employer premiums. The financial impact of the modifications to R.C. 4123.57(B) is that the employers, particularly the self-insureds, now realize a cost savings because seriously disabled and disfigured workers are now required to wait for the full payment of their scheduled loss benefits.

{¶30} While the legislature sets the BWC's appropriation authority (i.e., spending limits), no changes were made in this regard by H.B. 487. Like the legislation invalidated by the decisions in *Cleveland,* 2013-Ohio-1186, 989 N.E.2d 1072 (8th Dist.);

*Rumpke,* 184 Ohio App.3d 135, 2009-Ohio-4888, 919 N.E.2d 826*; Simmons-Harris,* 86 Ohio St.3d 1, 1999-Ohio-77, 711 N.E.2d 203; and *Ohio Civ. Serv. Emps. Assn.,* 104 Ohio St.3d 122, 2004-Ohio-6363, 818 N.E.2d 688, the amendment to R.C. 4123.57(B) lacks any relationship to the other wide-ranging provisions in the 1,788 page bill. The amendments to R.C. 4123.57(B) were tucked away in the lengthy enactment, ensuring they would evade public commentary.

{¶31} H.B. 487 affects not only the payment of scheduled loss benefits and a number of budgetary issues outside of workers  compensation, but also a wide range of other topics including, but not limited to:  the publication of legal notices and advertisements (R.C. 7.10 and 7.16), the creation of a legislative task force on redistricting, reapportionment, and demographic research (R.C. 103.51), eligibility standards and procedures for programs administered by the Department of Aging, Department of Alcohol and Drug Addiction Services, Department of Development, Department of Developmental Disabilities, Department of Education, Department of Health, Department of Job and Family Services, Department of Mental Health, and Rehabilitation Services Commission (R.C. 121.35), the establishment of the SellOhio Global Initiative Fund (R.C. 122.862), the addition of the State Fire Marshall, or the State Fire Marshall's designee to the Multi-agency Radio Communications System Steering Committee (R.C. 701.50), a request to the Joint Committee on the Library of Congress to approve the replacement of the statue of Governor William Allen in the National Statuary Hall Collection with a statue of Thomas Edison (R.C. 701.121(A)), revisions to the Court

of Claims Act and related issues concerning claims for wrongful imprisonment (R.C. 2743.40), and authorization for the Director of the Department of Public Safety to approve an online remedial driving course (R.C. 4508.02).

{¶32} Despite its title, it is apparent that the Mid-Biennium Budget Review bill extends beyond "budget related items." Defendants argue that H.B. 487 does not violate the one-subject rule because it deals with the distribution of monetary benefits by a state agency (BWC) to injured workers. As we stated in *Cleveland*, "[w]e are deeply concerned with the broad scope of the state's argument here. Under the state's logic, every subject matter statewide that conceivably can be connected to a dollar of not merely state funding but also municipal spending could be substantively regulated in a single appropriations bill." *Id.,* 2013-Ohio-1186, 989 N.E.2d 1072, at ¶ 51.

{¶33} Just as we did in *Cleveland*, in the instant case, we reject the concept that such a tenuous, tangential link can serve as the unifying thread between an amendment that lengthens the payment period for scheduled loss benefits to permanently injured workers when the BWC's administrative costs were not directly affected by the passage of H.B. 487, and the state fund is solely funded by premium payments from employers. This disunity of nature is exactly what the one-subject rule precludes. Based on the foregoing, we find the portion of H.B. 487 that amends the period for paying scheduled loss benefits to injured workers under R.C. 4123.57(B) violates the one-subject rule set forth in Section 15(D), Article II, of the Ohio Constitution.

{¶34} Therefore, the sole assignment of error is sustained.

**{¶35}** Accordingly, we reverse the trial court's judgment and remand with instructions for the trial court to enter judgment, as a matter of law, in favor of plaintiffs. *See* App.R. 12(B).

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MARY EILEEN KILBANE, PRESIDING JUDGE

SEAN C. GALLAGHER, J., CONCURS;
TIM McCORMACK, J., DISSENTS (SEE SEPARATE DISSENTING OPINION)


TIM McCORMACK, J., DISSENTING:

**{¶36}** For the sake of their dignity, a dedicated, productive family provider who, as a result of a major accident, is mangled at their workplace should at the very least be authorized to choose from the disability benefits to which he or she is entitled through workers' compensation law. Whether compensation benefits are needed immediately and taken in lump sum or are spread over months and years should be an option for the injured worker to choose, determined on an individual basis. Were I still a member of

Ohio's distinguished General Assembly, I would cast my vote for case-by-case flexibility rather than strictly prolonged, doled-out benefits. I am though no longer an Ohio legislator and have no vote on the matter. My role is different today.

{¶37} As an Ohio Court of Appeals judge, my duty dictates that I not act upon my policy instincts but that I participate in decisions about genuine conflicts between parties as to the interpretation and application of Ohio law.

{¶38} In this matter, we are not tasked to assess the wisdom of compensation policy but instead whether the General Assembly violated the Ohio Constitution's prohibition of having too many unrelated subject matters pieced together in a very large budget bill. Without writing at length, I have determined that the workers' compensation amendment inserted into the budget bill was not so far out of the park as to classify it as an outlier. Would I as a voting member have respectfully requested that the language not be adopted? Yes I would have. Did the House and Senate have the constitutional authority to adopt the language? Yes they did.

{¶39} I therefore would agree with the trial court's judgment.